Kenneth Warren HANSON,
Petitioner-Appellant,

v.

CIRCUIT COURT OF the FIRST JUDICIAL CIRCUIT OF ILLINOIS,
Respondent-Appellee.

No. 78–1296.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 30, 1978.

Decided Jan. 29, 1979.

Hazel Fisher, Certified Senior Law Student, Northwestern University Legal Clinic, Chicago, Ill., for petitioner-appellant.

Fred H. Montgomery, Asst. Atty. Gen., Chicago, Ill., for respondent-appellee.

Before FAIRCHILD, Chief Judge, and PELL and WOOD, Circuit Judges.

HARLINGTON WOOD, Jr., Circuit Judge.

The petitioner, Kenneth Warren Hanson, appeals to this court from the trial court's dismissal of his petition for a writ of habeas corpus. Three questions are raised. First, is a fine-only conviction a sufficient restraint on liberty to constitute "custody"

within the meaning of the federal habeas corpus statute, 28 U.S.C. § 2254? Second, if not, does the consideration of one state's judgment of conviction by parole authorities in another state cause the prisoner to be in the custody of authorities of the state which rendered the conviction? Third, if a convicted person cannot maintain a habeas corpus action because he is not in custody, can he maintain an action under 42 U.S.C. § 1983 to challenge the conviction? Finding that the answer to each of the questions is no, we affirm the dismissal of the petition.

## I. The Facts

On December 16, 1975, after a trial in which he was represented by counsel, petitioner was found guilty of unlawful use of weapons by a Jackson County, Illinois, jury. Petitioner was fined $150. Petitioner filed a timely *pro se* notice of appeal and requested the trial court, the Illinois Appellate Court and the state appellate defender to provide counsel for his appeal. Although petitioner alleged that he was indigent, owned no personal or real property, and had only thirty dollars in cash, his requests for counsel were denied. Petitioner's request for a transcript of proceedings before the trial court and a common law record in order to perfect his appeal was also unavailing.

On March 5, 1976, petitioner was removed from the custody of Illinois authorities. He was taken by California officials to California, tried and convicted of a crime which does not appear in the record, and committed to the custody of the Director of the California Department of Corrections. In May 1977, on the motion of the State's Attorney for Jackson County, petitioner's appeal of the Illinois weapons conviction was dismissed for lack of diligent prosecution. Petitioner remains in the custody of California officials until the present time.

Petitioner filed his petition for a writ of habeas corpus in the federal district court in the Eastern District of Illinois in 1977. He maintained there, and urges upon us here, that he was denied appellate counsel and a transcript because of indigency contrary to requirements of the equal protection and due process clauses of the Fourteenth Amendment. *See Griffin v. Illinois,* 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956); *Douglas v. California,* 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963); *Mayer v. City of Chicago,* 404 U.S. 189, 92 S.Ct. 410, 30 L.Ed.2d 372 (1971). The district court, however, never reached the merits of petitioner's claim. It held that "the mere imposition of a fine is an insufficient restraint to satisfy the custody requirement" of the federal habeas corpus statute and dismissed the petition.

## II. The Custody Requirement

The question which the trial court certified for appeal, and the initial question which we examine here, is whether a state court conviction for which the only punishment is a fine is subject to collateral attack in federal habeas corpus. Restated, the question is whether a "fine-only" criminal conviction constitutes "custody" within the meaning of 28 U.S.C. § 2254. As have the other federal circuit courts which have considered the issue,[1] we answer the question in the negative.

Petitioner relies on a series of Supreme Court decisions beginning with *Jones v. Cunningham,* 371 U.S. 236, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963), for the proposition that custody as used in the habeas corpus statutes is not limited solely to physical restraints upon the person of the petitioner. *See Carafas v. LaVallee,* 391 U.S. 234, 88 S.Ct. 1556, 20 L.Ed.2d 554 (1968) (custody is determined when petition is filed; subsequent release of petitioner does not moot the case); *Hensley v. Municipal Court,* 411

---

1. *Furey v. Hyland,* 395 F.Supp. 1356 (D.N.J. 1975), *aff'd without opinion,* 532 F.2d 746 (3d Cir. 1976); *Wright v. Bailey,* 544 F.2d 737 (4th Cir. 1976), *cert. denied,* 434 U.S. 825, 98 S.Ct. 72, 54 L.Ed.2d 82 (1977); *Westberry v. Keith,* 434 F.2d 623 (5th Cir. 1970); *Russell v. City of*

*Pierre,* 530 F.2d 791 (8th Cir.), *cert. denied,* 429 U.S. 855, 97 S.Ct. 150, 50 L.Ed.2d 131 (1976); *Edmunds v. Won Bae Chang,* 509 F.2d 39 (9th Cir.), *cert. denied,* 423 U.S. 825, 96 S.Ct. 39, 46 L.Ed.2d 41 (1975).

U.S. 345, 93 S.Ct. 1571, 36 L.Ed.2d 294 (1973) (release on personal recognizance prior to imprisonment constitutes "custody"). *See generally* 17 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 4262 (1978); *Developments in the Law— Habeas Corpus,* 83 Harv.L.Rev. 1038, 1073– 79 (1970). *Jones* listed the numerous restrictions imposed on parolees—"significant restraints . . . in addition to those imposed by the State upon the public generally"—and found them onerous enough to invoke the protection afforded by the Great Writ. 371 U.S. at 241–43, 83 S.Ct. at 376– 377. Similarly, *Carafas* recited the civil disabilities attendant upon a criminal conviction even after release from imprisonment. Furthermore, in *Hensley* the Court declared:

> Our recent decisions have reasoned from the premise that habeas corpus is not "a static, narrow, formalistic remedy," . . . but one which must retain the "ability to cut through barriers of form and procedural mazes." . . . "The very nature of the writ demands that it be administered with the initiative and flexibility essential to insure that miscarriages of justice within its reach are surfaced and corrected."

Thus, we have consistently rejected interpretations of the habeas corpus statute that would suffocate the writ in stifling formalisms or hobble its effectiveness with the manacles of arcane and scholastic procedural requirements. The demand for speed, flexibility, and simplicity is clearly evident in our decisions.

411 U.S. at 349–50, 93 S.Ct. at 1574.

Petitioner relies upon the collateral consequences of a criminal conviction similar to those which the Supreme Court referred to and the liberal construction given the statute in support of his claim that a fine-only conviction constitutes custody. Petitioner argues:

Since the Court has determined that non-physical restraints on liberty may be severe enough to warrant invocation of the writ, there is no basis in law for the district court's conclusive presumption that Petitioner's conviction and fine only sentence cannot under any circumstances be severe enough to justify issuance of a writ of habeas corpus. The arbitrariness of the district court's conclusive presumption of no habeas jurisdiction whenever there is no physical confinement is manifest from its anomalous effect in the following situations: one who spends only ten minutes in jail as a result of an unconstitutional minor misdemeanor conviction would automatically be granted habeas review, while one who is not so imprisoned, but who loses his job, his right to vote, his reputation and a substantial part of his assets as a result of an unconstitutional fine only felony conviction would automatically be denied habeas review.

We think that the authority relied upon by petitioner is distinguishable. Despite the broad, sweeping language of the Supreme Court's opinions, each decision's holding is narrow.[2] *Jones* found the severe restrictions on a parolee's freedom of movement sufficient to constitute custody.[3] *Hensley* held that the restraints on one on bond pending completion of his habeas attack equally as severe.[4] In *Carafas* the Court's discussion of the civil disabilities imposed on convicted criminals merely re-

---

**2.** The Court has characterized this group of decisions finding custody in restraints less obvious than physical confinement as "no more than a logical extension of the traditional meaning and purpose of habeas corpus—to effect release from illegal custody." *Preiser v. Rodriguez,* 411 U.S. 475, 486 n.7, 93 S.Ct. 1827, 1834, 36 L.Ed.2d 439 (1973).

**3.** Parole authorities required Jones to stay in a particular community, live in a particular house, and keep a particular job. He could not drive a car without permission. Deviations from these and other standards of conduct set

by the parole authorities would result in immediate reincarceration. 371 U.S. at 242, 83 S.Ct. 373.

**4.** The Court gave the following description of the restrictions on Hensley's freedom:

> He cannot come and go as he pleases. His freedom of movement rests in the hands of state judicial officers, who may demand his presence at any time and without a moment's notice. Disobedience is itself a criminal offense. . . .
>
> The State has emphatically indicated its determination to put him behind bars, and the

lated to the issue of mootness. The Court's holding on the jurisdictional issue of custody was unexceptional: events occurring after the filing of a petition do not oust a federal court of jurisdiction.[5]

█ Admittedly, once the notion that custody means only confinement within the four walls of a prison is abandoned, finding a principled basis upon which to draw lines is difficult. *See generally The Supreme Court—1967 Term,* 82 Harv.L.Rev. 93, 249–54 (1968). We must, however, attach some meaning to the Congressional limitation on habeas corpus jurisdiction; Congress did not authorize the federal courts to be roving commissions to correct all constitutional errors in state criminal proceedings. We do not "suffocate the writ in stifling formalisms or hobble its effectiveness," *Hensley,* 411 U.S. at 350, 93 S.Ct. at 1574, by refusing to extend the availability of the writ to situations clearly beyond those intended by Congress. Although the restraints in *Jones, Carafas,* and *Hensley* and those confronting the petitioner here may differ only in degree, we think the degree of difference is significant. The Supreme Court has declared the purpose of the custody requirement to be "to preserve the writ of habeas corpus as a remedy for *severe restraints on individual liberty." Id.* at 351, 93 S.Ct. at 1574 (emphasis added.) We hold that a fine-only conviction is not a restraint on individual liberty.[6] Moreover, we hold that the ordinary collateral consequences or civil disabilities flowing from a fine-only conviction, although they may be restraints on liberty, are not severe enough to put the convicted person in custody within the meaning of the habeas corpus statute.[7]

## III. Constructive Custody

Petitioner advances a second basis for finding him to be in custody within the

> State has taken every possible step to secure that result. His incarceration is not, in other words, a speculative possibility.
> 411 U.S. at 351–52, 93 S.Ct. at 1575.

5. Thus, *Carafas* may be considered no more than an application of the general rule that the jurisdiction of the federal court is determined at the time of the filing of the complaint. *See Mullen v. Torrance,* 22 U.S. (9 Wheat.) 537, 539, 6 L.Ed. 154 (1824) (diversity not defeated when party subsequently becomes a citizen of the same state as his opponent); *St. Paul Mercury Indemnity Co. v. Red Cab Co.,* 303 U.S. 283, 58 S.Ct. 586, 82 L.Ed. 845 (1938) (court not ousted of jurisdiction if plaintiff reduces claim to less than jurisdictional amount subsequent to removal from state court).

6. The only loss necessarily incurred by petitioner by the conviction was the loss of $150. The conviction therefore simply did not deprive the petitioner of liberty. Although the distinction between "property" and "liberty" may, as petitioner suggests, be arbitrary in some cases, it is one that the Supreme Court has made in constitutional adjudication. *Cf. Argersinger v. Hamlin,* 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972) (absent waiver, no person may be imprisoned unless represented at trial by counsel; presumably one may be punished by a fine only without benefit of counsel). Here, of course, we only construe the language of a statute.

We also note that petitioner has not claimed that he is unable to pay the fine and will be incarcerated for such failure.

> True enough, a threat of incarceration is implicit in any court-imposed fine, for jail is one of the sanctions by which courts enforce their judgments and orders. Hence a fine may in some circumstances ultimately prove to be the price of freedom. But until confinement is imminent—as it was in *Hensley* where only a stay held off execution of the petitioner's one-year jail sentence—the "special urgency" justifying use of the habeas remedy is notably absent.

*Edmunds v. Won Bae Chang,* 509 F.2d 39, 41 (9th Cir.), *cert. denied,* 423 U.S. 825, 96 S.Ct. 39, 46 L.Ed.2d 41 (1975); *cf. United States ex rel. Lawrence v. Woods,* 432 F.2d 1072 (7th Cir. 1970), *cert. denied,* 402 U.S. 983, 91 S.Ct. 1658, 29 L.Ed.2d 148 (1971) (petitioner refused to pay $100 fine and was incarcerated; court considered habeas petition on its merits).

7. *Accord, Furey v. Hyland,* 395 F.Supp. 1356 (D.N.J.1975), *aff'd without opinion,* 532 F.2d 746 (3d Cir. 1976) (custody not established by allegations of potential loss of physician's license, damage to professional and community reputation, and statutory disabilities including possible use of conviction to impeach petitioner's credibility as a witness, bar from holding game licenses, liquor licenses and gun permits, and disqualification from serving as a juror or municipal officer or employee). *Cf. Baldwin v. New York,* 399 U.S. 66, 73, 90 S.Ct. 1886, 1890, 26 L.Ed.2d 437 (1970) (opinion of White, J.) ("Of necessity, the task of drawing a line 'requires attaching different consequences to events which, when they lie near the line, actually differ very little' ").

meaning of 28 U.S.C. § 2254. Petitioner is now serving a term of imprisonment in California. He maintains that California parole authorities are required by law to consider his prior conviction in making a parole determination.[8] Thus, petitioner argues that under these particular circumstances in which the challenged conviction will increase his confinement under a subsequent conviction that he is in custody for the purpose of attacking the prior conviction.[9] We have no doubt that petitioner is in custody. Furthermore, it seems clear that he is "in custody pursuant to the judgment of a State court" within the meaning of section 2254. The judgment under which he is in custody, however, is a California judgment, not an Illinois judgment. It would seem to follow that his custodian, the proper party respondent in a habeas corpus action, is California, not Illinois.

A petition for a writ of habeas corpus must "name . . . the person who has custody over" the petitioner, 28 U.S.C. § 2242, and any writ issued "shall be directed to the person having custody of the person detained." *Id.* § 2243. The Supreme Court, despite its expansion of the custody requirement, has reaffirmed the necessity for jurisdiction over the person of the custodian: "The writ of habeas corpus does not act upon the prisoner who seeks relief, but upon the person who holds him in what is alleged to be unlawful custody." *Braden v. 30th Judicial Circuit Court,* 410 U.S. 484, 494–95, 93 S.Ct. 1123, 1129, 35 L.Ed.2d 443 (1973). We do not believe that any Illinois official can be deemed to have custody over the petitioner who is now confined in a California penitentiary.

Petitioner has presented a two-pronged argument that Illinois is his "constructive" custodian. Petitioner relies on *Peyton v. Rowe,* 391 U.S. 54, 88 S.Ct. 1549, 20 L.Ed.2d 426 (1968), to establish the first prong of his argument that a prisoner can attack a conviction other than the one under which he is currently confined. *Peyton* abandoned the prematurity doctrine and permitted a prisoner serving the first of two consecutive sentences to attack the conviction underlying the second. Thus, it is not applicable here. Petitioner, however, cites decisions of lower federal courts which have extended the principle to permit a prisoner confined pursuant to one judgment of conviction to attack the validity of a separate, prior conviction if it prolongs the period of his confinement.[10] These decisions have held that the prior conviction may be attacked even

---

8. Petitioner raises this issue for the first time on appeal. The petition filed in the district court did not allege any nexus between petitioner's Illinois conviction and his California confinement, and, although petitioner's motion for a certificate of probable cause to appeal generally alleged such a connection, we do not believe that the district court was then obligated to consider petitioner's new theory. Ordinarily, when a litigant fails to present an issue before the district court, we will decline to consider it here. In this case, however, we see little sense in having petitioner file a new petition before the district court to bring the issue to our attention. The issue has been adequately briefed by the parties and there has been no unfair surprise by the party who seeks to present the new theory. Consequently, in accordance with the policy of the courts to remove technical obstacles in lawsuits brought by *pro se* prisoners, *cf. Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) (per curiam), we will consider the theory on the merits.

9. Petitioner maintains that a state statute requires California parole authorities to consider prior convictions in determining whether "[t]he

public safety requires a more lengthy period of incarceration." Cal.Penal Code § 3041 (West Supp.1978). We need not attempt here to construe the California statute or to determine whether the petitioner would be subject to its provisions. For the purpose of this discussion, we will assume that the statute applies to petitioner, that it requires parole authorities to consider petitioner's prior Illinois conviction, and that petitioner's release from confinement will be delayed as a result of that consideration.

10. Petitioner's brief cites *Cappetta v. Wainwright,* 406 F.2d 1238 (5th Cir.), *cert. denied,* 396 U.S. 846, 90 S.Ct. 55, 24 L.Ed.2d 96 (1969), and *Midgett v. McClelland,* 547 F.2d 1194 (4th Cir. 1977). Although not cited in petitioner's brief, decisions of the Third Circuit have reached the same conclusion. *See Lyons v. Brierly,* 435 F.2d 1214 (3d Cir. 1970); *United States ex rel. Di Rienzo v. New Jersey,* 423 F.2d 224 (3d Cir. 1970). Because we find the second prong of petitioner's argument to be without merit, we need not consider whether to adopt the position taken by these courts.

though the sentence imposed under that conviction has been completely served.

All of these decisions, however, have involved the situation in which the conviction under which the petitioner was confined and the conviction which he attacked were imposed by the same state. Petitioner therefore maintains that *Braden v. 30th Judicial Circuit Court,* 410 U.S. 484, 93 S.Ct. 1123, 35 L.Ed.2d 443 (1973), establishes the second prong of his argument: that the habeas petition may be brought in the state where it can be most effectively litigated. Since the invalidity of the Illinois conviction forms the basis of petitioner's claim, he maintains that the federal court in Illinois is the proper forum for his lawsuit.

■ Even if the first prong of petitioner's argument is sound, petitioner's claim must fail. *Braden* merely discussed which federal court is the proper forum when a prisoner attacks an interstate detainer in federal habeas corpus. The Court refused to give a narrow construction to the statutory requirement that federal courts grant writs of habeas corpus only "within their respective jurisdictions." 28 U.S.C. § 2241(a). Thus, the Court permitted a petitioner imprisoned in Alabama to attack in a federal district court in Kentucky a detainer lodged against him by Kentucky. *Braden,* however, does not establish any liberal choice of forum rule which permits petitioner to ignore service on his custodian. The court reaffirmed the statutory requirement that the writ acts upon the custodian. Moreover, the court relied on very narrow grounds in holding, as a preliminary matter, that the petitioner was in the custody of Kentucky officials:

> Since the Alabama warden acts here as the agent of the Commonwealth of Kentucky in holding the petitioner pursuant to the Kentucky detainer, we have no difficulty concluding that petitioner is "in custody" for purposes of 28 U.S.C. § 2241(c)(3). On the facts of this case, we need not decide whether, if no detainer had been issued against him, petitioner would be sufficiently "in custody" to attack the Kentucky indictment by an action in habeas corpus.

410 U.S. at 489 n.4, 93 S.Ct. at 1127. In the present case, California can in no sense be deemed the agent of Illinois. Unlike Kentucky whose detainer against *Braden* clearly indicated the state's resolve to subject the petitioner to trial and later imprisonment, Illinois has no interest in the present or future confinement of the petitioner. Illinois has obtained its conviction and extracted its punishment, the payment of the $150 fine. Although the Illinois conviction may result in prolonging the petitioner's confinement in California's prisons, that is not the result of any Illinois law. The adverse consequences that the conviction may have on petitioner are due only to the force which California by its laws chooses to give to the conviction.

## IV. Relief Under Section 1983

■ Petitioner's alternative position is that if we find that the district court was without jurisdiction to consider his petition sounding in habeas corpus, the petition nevertheless alleges a valid cause of action under 42 U.S.C. § 1983. Petitioner maintains that Congress had a "unity of purpose" in enacting section 1983 and the habeas corpus statute—a purpose to make one or the other of the statutes available to ensure the role of the federal courts as the ultimate guardians of federal rights. Although petitioner acknowledges that sometimes neither statute provides an appropriate remedy for the violation of federal civil rights, *cf. Stone v. Powell,* 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), he contends that only clear statutory directives or compelling reasons of judicial policy should preclude providing a federal forum to one whose constitutional rights have been violated. Petitioner argues that neither of these exceptions apply here and urges us to permit him to seek declaratory relief invalidating the Illinois judgment of conviction. We do not quarrel with petitioner's assertion that the federal courts are usually the ultimate guardians of federal rights. The question presented here, however, is whether section 1983 provides a federal court with the power to inquire into the validity of his

fine-only conviction by the Illinois courts.[11] We hold that it does not.

Petitioner, in essence, seeks to collaterally attack the state court judgment of conviction. This is a matter traditionally regarded as within the core of habeas corpus—"an extraordinary remedy whose operation is to a large extent uninhibited by traditional rules of finality and federalism." *Hensley,* 411 U.S. at 351, 93 S.Ct. at 1574. Yet, as we hold above, petitioner cannot seek a writ of habeas corpus against Illinois because he is not in the state's custody.

In *Preiser v. Rodriguez,* 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973), the Supreme Court held that habeas corpus provides the exclusive federal remedy for prisoners attacking the fact or duration of their confinement. Consequently, it would not permit a section 1983 attack in an action in which habeas would lie. We think that Congress intended that habeas corpus provide not only the exclusive federal remedy for those in custody, but also the exclusive federal remedy for all who seek to attack state court judgments of convictions. Thus, convictions not subject to question in habeas are immune from collateral inquiry by the federal courts. The broad, general terms of section 1983 must necessarily yield to the narrower terms of the habeas corpus statute; limitations contained within the more specific statute also limit the availability of remedies under the more general

statute. We therefore adopt the reasoning of *Cavett v. Ellis,* 578 F.2d 567 (5th Cir. 1978):

> Stripped to the bone, the plaintiff's action under § 1983 is little more than a habeas corpus action without a custody requirement. We do not believe that § 1983 was meant to be a substitute for habeas corpus when there is no custody. Under 28 U.S.C. § 2254, we have authority to grant habeas corpus relief to persons in custody pursuant to judgments of state courts. This is the Great Writ, and we endeavor to make it available to those suffering under unconstitutional imprisonment. We have, however, refused to extend habeas corpus relief to those not in custody. Under his theory of § 1983, the appellant would have us sit in perpetual review of all criminal decisions. We will not make the appellant's § 1983 action the greater writ by avoiding the custody requirement of § 2254 indirectly while refusing to extend the custody requirement directly.

*Id.* at 569.[12]

Our holding that the habeas corpus statute carries with it a penumbral effect which precludes a 1983 action which would nullify a prior state criminal conviction is consistent with the principles of federalism, comity, and equity which govern the exercise of the power of the federal courts.[13] In *Huff-*

---

**11.** Although it is not clear that petitioner has no remedy in other federal courts, *see* Part V *infra,* we will assume *arguendo* that the federal courts in California will not reach the merits of petitioner's constitutional claim.

**12.** *Contra, Shipp v. Todd,* 568 F.2d 133 (9th Cir. 1978) (per curiam); *cf. Pueschel v. Leuba,* 383 F.Supp. 576 (D.Conn.1974). The court's brief opinion in *Shipp* does not discuss the relationship between section 1983 and federal habeas corpus. In *Pueschel* the court did not resolve the issue because it found that even if the action could be maintained under section 1983, collateral estoppel precluded litigation on the merits. We find the analysis of the Fifth Circuit more persuasive.

**13.** *Cf. Developments in the Law—Section 1983 and Federalism,* 90 Harv.L.Rev. 1133, 1337–38 (1977):

> Federal habeas corpus is, of course, one instance where the costs of collateral attack are incurred. But because federal habeas corpus may be invoked only after the exhaustion of available state remedies, the states retain the opportunity to review and correct their judgments prior to federal intervention. More importantly, federal habeas corpus rests on the paramount importance of freedom from unlawful restraint. And even in the face of this compelling justification, the Supreme Court has recently restricted the circumstances in which collateral attack on a writ of habeas corpus is available. Whether or not cutbacks in the availability of federal habeas corpus are wise, it seems clear that in cases where habeas review is not available, permitting attack on state judgments through actions brought under section 1983 cannot be justified in light of the costs involved and the constraints imposed by the continued viability of the *Younger* doctrine.

man v. Pursue, Ltd., 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975), the Court, although in a context different than the one presented here, noted the narrow role of federal courts when reviewing matters which could have been raised on appeal in the state courts:

> Federal post-trial intervention, in a fashion designed to annul the results of a state trial . . . deprives the States of a function which quite legitimately is left to them, that of overseeing trial court dispositions of constitutional issues which arise in civil litigation over which they have jurisdiction. We think this consideration to be of some importance because it is typically a judicial system's appellate courts which are by their nature a litigant's most appropriate forum for the resolution of constitutional contentions. . . . In short, we do not believe that a State's judicial system would be fairly accorded the opportunity to resolve federal issues arising in its courts if a federal district court were permitted to substitute itself for the State's appellate courts.

Id. at 609, 95 S.Ct at 1210–1211.[14] It is true that the gist of petitioner's claim is that he was afforded inadequate resources to prosecute his appeal. Nevertheless, given the lack of severity of his sentence and the interests of finality of state court judgments, we think it is inappropriate for a federal court to grant petitioner the relief he seeks. To do so would be to expand the scope of section 1983 far beyond that contemplated by Congress. Petitioner's claim is one that should have been vindicated by appeal to the Illinois Supreme Court and, if necessary, to the United States Supreme Court. See Mayer v. City of Chicago, 404 U.S. 189, 92 S.Ct. 410, 30 L.Ed.2d 372 (1971). Direct review by the United States Supreme Court is sufficient to preserve the role of the federal courts as the ultimate guardians of federally guaranteed rights.

The Supreme Court has noted that:

> Resort to habeas corpus . . . results in serious intrusions on values important to our system of government. They include "(i) the most effective utilization of limited judicial resources, (ii) the necessity of finality in criminal trials, (iii) the minimization of friction between our federal and state systems of justice, and (iv) the maintenance of the constitutional balance upon which the doctrine of federalism is founded."

Stone v. Powell, 428 U.S. 465, 491 n.31, 96 S.Ct. 3037, 3051, 49 L.Ed.2d 1067 (1976). We decline to accept petitioner's invitation to impinge upon these values in the absence of unambiguous Congressional authorization.[15] We hold that petitioner fails to state a cause of action under 42 U.S.C. § 1983.

## V. Conclusion

Our decision in this case does not necessarily foreclose the petitioner from obtain-

---

**14.** Compare Wooley v. Maynard, 430 U.S. 705, 711, 97 S.Ct. 1428, 1433, 51 L.Ed.2d 752 (1977) (granting relief):

> Here, however, the suit is in no way "designed to annul the results of a state trial" since the relief sought is wholly prospective, to preclude further prosecution under a statute alleged to violate appellees' constitutional rights. Maynard has already sustained convictions and has served a sentence of imprisonment for his prior offenses. He does not seek to have his record expunged, nor to annul any collateral effects those convictions may have, e. g., upon his driving privileges. The Maynards seek only to be free from prosecutions for future violations of the same statutes.

**15.** See also Developments in the Law—Section 1983 and Federalism, 90 Harv.L.Rev. 1133, 1136 (1977):

> Such a rule [permitting litigants to impeach adverse state court judgments by raising their federal claims in subsequent 1983 actions and obtaining federal relief nullifying the effects of those judgments] would be costly both in terms of federal-state tensions and judicial economy, for it would deny state courts their usual competence to decide with finality questions that are within their jurisdiction and would hamper the state's ability to enforce its substantive law. Only if one believed that state courts were systematically either unwilling or unable to enforce federal constitutional rights could such costs be justified. To adopt such an argument, however, and to allow state judgments thus to be impeached, is wholly inconsistent with the logic and application of the Younger doctrine.

ing relief against the use of the Illinois conviction by California parole authorities. Although we, of course, express no opinion on the merits, we note that petitioner may have several nonfrivolous theories to prevent California parole officials from considering his allegedly void Illinois conviction. First, the federal courts in the Ninth Circuit may hold that California's custody of petitioner provides a sufficient jurisdictional basis to inquire into the validity of the Illinois conviction if, as petitioner alleges, the conviction prolongs petitioner's confinement in prison. *See* cases cited note 10 *supra.* Second, in *United States v. Tucker,* 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972), and *Loper v. Beto,* 405 U.S. 473, 92 S.Ct. 1014, 31 L.Ed.2d 374 (1972), the Supreme Court held that the use of a prior, constitutionally infirm conviction to "enhance punishment" or "support guilt" amounted to an independent violation of due process. Although *Tucker* and *Loper* involved the use of prior convictions obtained in violation of the defendant's Sixth Amendment right to counsel, lower courts subsequently have extended the rule to embrace prior convictions tainted by other constitutional defects. *See, e. g., Jefferson v. United States,* 488 F.2d 391 (5th Cir. 1974) (self-incrimination). *But see Tisnado v. United States,* 547 F.2d 452 (9th Cir. 1976) (Fourth Amendment). Arguably, petitioner's claim under the *Griffin-Douglas* principle casts sufficient doubt on the probativeness of his Illinois conviction to fall within the *Tucker-Loper* rule. If so, and if the courts extend the principle to exclude consideration of void prior convictions by parole authorities, *see Strader v. Troy,* 571 F.2d 1263, 1269–70 (4th Cir. 1978), petitioner may maintain an appropriate action against the California parole authorities to prevent them from considering the Illinois conviction. In any event, these are theories that petitioner may pursue against California—not Illinois—officials.

**16.** *Cf. Loper v. Beto,* 405 U.S. 473, 500, 92 S.Ct. 1014, 1027, 31 L.Ed.2d 374 (1972) (Rehnquist, J., dissenting):

It is a sufficiently difficult task for a federal district court sitting in Texas to review a Texas state criminal proceeding for constitutional error . . . ..

It may seem anomalous that petitioner, in order to attack the validity of his Illinois conviction, must maintain his action against California and not directly against Illinois. Such an indirect route to challenge the conviction may seem wasteful of judicial resources.[16] Nevertheless, the custody requirement of the federal habeas corpus statute dictates that petitioner has no federally cognizable action against Illinois either in habeas corpus or under section 1983.

The custody requirement of the federal statute and many state provisions for post-conviction relief have been criticized as overly restrictive. The ABA Standards, for example, would abandon the requirement and permit collateral attack "even though the applicant has completely served the challenged sentence [or] even though the challenged sentence did not commit the applicant to prison, but was rather a fine, probation, or suspended sentence." Standards Relating to Post-Conviction Remedies 2.3 (Approved Draft, 1968). The commentary accompanying the Standards explains the reason for the proposal:

Frequently, this is made necessary by the application of multiple offender laws which upgrade the authorized or prescribed sentence for a present offense on the strength of the defendant's prior record. Parole consideration is likely to be influenced by the number of previous or concurrent convictions. Civil disabilities of more or less impingement frequently continue after a sentence has been completed.

Petitioner's complaint would seem to fall precisely within the class of cases which the drafters of the Standards had in mind. The need for relief may be apparent, but the abandonment of the custody requirement is a matter for legislative, not judicial, action.

It is a good deal more difficult for the same Texas habeas court to make a second-level collateral review of judgments of conviction rendered in the state courts of Mississippi and Tennessee.

Both Congress and the Illinois legislature can fashion appropriate relief for persons in petitioner's predicament. We decline to do so, either by reading the custody requirement out of the federal habeas statute or by circumventing the requirement by an expansive construction of section 1983.

The judgment of the district court is AFFIRMED.