**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Orville Leon PAYNE,**
**Defendant-Appellant.**

**No. 83–1834.**

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 15, 1984.

Decided July 16, 1984.

Rehearing and Rehearing In Banc
Denied Aug. 13, 1984.

Kennard P. Foster, Asst. U.S. Atty., Sarah Evans Barker, U.S. Atty., Indianapolis, Ind., for plaintiff-appellee.

Orville Leon Payne, pro se.

Before CUMMINGS, Chief Judge, FLAUM, Circuit Judge, and PARSONS, Senior District Judge.[*]

PER CURIAM.

Orville Payne was convicted in the United States District Court for the Southern District of Indiana, New Albany Division, of one count of conspiracy under 18 U.S.C. § 371. That conviction was affirmed by this Court in *United States v. Payne*, 635 F.2d 643 (7th Cir.1980), rehearing and rehearing *en banc* denied (1981), certiorari denied, 451 U.S. 972, 101 S.Ct. 2050, 68 L.Ed.2d 351. Payne now appeals the district court's denial of his motion, pursuant to 28 U.S.C. § 2255, attacking the sentence imposed in that conviction.

The case comes before this Court in a confusing and complicated procedural posture. Payne filed his Section 2255 motion on November 1, 1982, near the end of his conspiracy sentence, while he was completing the last days of his parole term.[1] On February 10, 1982, the district court issued an order sustaining a government motion to dismiss Payne's Section 2255 motion. Payne then filed a Fed.R.Civ.P. 60(b)(3) motion for relief from the order, claiming that he had never received the motion to dismiss. Before ruling on this motion, the

---

[*] The Honorable James B. Parsons, Senior District Judge for the Northern District of Illinois, is sitting by designation.

1. Payne had been originally sentenced to five years in prison but that sentence was subsequently modified to three years and ultimately reduced to eighteen months in prison and approximately one year on parole.

district court issued an order on March 9, 1982, and a memorandum order on March 15, 1982 (both docketed on March 18, 1982) denying Payne's original Section 2255 motion and dismissing his cause of action. Several days later the government moved to dismiss Payne's earlier Rule 60(b)(3) motion and on April 26, 1983, the district court denied Payne's motion and ordered it dismissed. Payne now appeals the denial and dismissal of both his Section 2255 motion and his Rule 60(b)(3) motion. We affirm the district court's orders, but to some extent for different reasons than given by that court.

### A. Section 2255 motion

Section 2255 provides for collateral review of the sentences of convicts in federal custody. Payne's Section 2255 motion challenged his federal sentence on the following grounds: (1) he was not guilty of the federal crime "presented by way of the indictment to the jury thru [*sic*] instructions"; (2) the incompetency and inadequacy of his counsel "resulted in a conviction and sentence based upon erroneous, unfounded conclusions"; and (3) "the indictment * * * as presented to the jury, is defective." (Motion Attacking Sentence, ¶ 9). Relying on *Hanson v. Circuit Court of First Judicial Circuit*, 591 F.2d 404, 406 (7th Cir.1979), certiorari denied, 444 U.S. 907, 100 S.Ct. 220, 62 L.Ed.2d 143, the district court decided that the conditions of Payne's parole were not restrictive enough to amount to custody and denied Payne's motion on the basis of lack of jurisdiction. The court also determined that Payne's substantive allegations were "insufficient grounds to warrant relief" (App. 4).

▮▮▮ The district court's determination that it lacked jurisdiction was erroneous. It is well settled that even if a convict is not actually incarcerated, Section 2255's "in custody" requirement is satisfied so long as he is subject to significant restraints on his freedom at the time he files for relief. *United States v. Condit*, 621 F.2d 1096,

1098 (10th Cir.1980) (citing *Jones v. Cunningham*, 371 U.S. 236, 243, 83 S.Ct. 373, 377, 9 L.Ed.2d 285); *Hanson*, 591 F.2d at 406 (citing *Jones*, supra). The conditions of Payne's parole, like those of the movant in *Jones* (see 371 U.S. at 242, 83 S.Ct. at 376), were sufficiently restrictive to establish that he was "in custody" for Section 2255 purposes. For instance, Payne was required to notify his probation officer of changes in residence or employment, to report to the officer at the officer's direction and at least monthly, and to obtain the officer's written permission before leaving the parole district or possessing firearms (Govt. Ex.B). Also, Payne's associational rights were limited severely (*Id.*, ¶¶ 7, 10). These conditions were significantly more restrictive than the consequences of a "fine-only" conviction in *Hanson* which were held insufficiently limiting to amount to custody. Thus the district court's reliance on *Hanson* was misplaced.[2]

With regard to the merits of the Section 2255 motion, the district court characterized Payne's claim that his guilt was not established as a sufficiency of the evidence claim and determined that this non-constitutional claim was barred in this collateral review proceeding because it had not been raised on direct appeal (App. 5–6). Payne's ineffective assistance of counsel claim was rejected on the basis that he had not shown that his attorney's conduct fell below minimum standards of professional representation (App. 6). Finally, the court dismissed Payne's claim that the indictment was insufficient by citing case law which indicated that such a claim is not properly raised in a Section 2255 proceeding (App. 6).

Payne continues to press on appeal only his ineffective assistance of counsel claim, apparently conceding the correctness of the district court's rulings on his other claims. Consequently, we review only the ineffective assistance claim. In light of the standards just recently elucidated by the Su-

---

2. Since Payne was in custody when he filed his motion, the subsequent expiration of his parole resulting in his release from custody did not

moot his claim. *Carafas v. LaVallee*, 391 U.S. 234, 88 S.Ct. 1556, 20 L.Ed.2d 554; *Hanson*, 591 F.2d at 405.

preme Court in *Strickland v. Washington*, —— U.S. ——, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984),[3] this Court holds that Payne has not made the showings required to establish that his counsel's ineffectiveness denied him a fair trial and the district court correctly denied his Section 2255 motion and properly dismissed his cause.

■ In *Strickland,* the Court makes clear that ineffective assistance claims must be evaluated in light of the purpose of the Sixth Amendment's right to counsel, which is "to ensure a fair trial." *Id.* at ——, 104 S.Ct. at 2064. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* To establish that his counsel's conduct was constitutionally defective, a defendant now is required to show both that the conduct was deficient and that this deficiency prejudiced the result.[4] *Id.*

■ The Court established guidelines for determining whether a defendant has satisfied the requirements under each of these prongs. To establish that counsel's conduct was deficient, the defendant must show counsel's specific acts or omissions which, viewed from the perspective of counsel at the time of the trial, fell below the standard of reasonable professional assistance. *Id.* at ——, 104 S.Ct. at 2065. In making such a showing, defendant must overcome the presumptions that counsel's conduct amounted to sound trial strategy (*Id.;* see also *United States v. Weston*, 708 F.2d 302, 306 (7th Cir.1983), certiorari denied, —— U.S. ——, 104 S.Ct. 397, 78 L.Ed.2d 340), and that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable

professional judgment." —— U.S. at ——, 104 S.Ct. at 2066. To satisfy the second prong, that counsel's deficient conduct was prejudicial, defendant must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at ——, 104 S.Ct. at 2068.

In light of these guidelines, we evaluate the important specific acts or omissions identified by Payne as showing deficient and prejudicial conduct.

### 1. Failure to Object to Impeachment

Alva Lucas was called by Payne's counsel as a defense character witness. In answer to counsel's questions, Lucas testified to Payne's reputation as a truthful person and law-abiding citizen. On cross-examination the government questioned Lucas about whether he knew of Payne's prior misdemeanor conviction for unlawfully selling a motor vehicle, the original identification of which had been removed.[5] Payne contends now that counsel was ineffective in failing to object that Lucas' answer was prejudicial.

■ However, Payne fails to make the showing required for either prong of the *Strickland* test. First, he does not overcome the presumption that counsel's failure to object amounted to sound trial strategy. *Strickland,* —— U.S. at ——, 104 S.Ct. at 2065; *Weston,* 708 F.2d at 306. A competent trial attorney might well eschew objecting to such a cross-examination technique in order to minimize jury attention to the damaging material. Furthermore, Payne has also failed to establish that counsel's conduct was prejudicial. At the conclusion of trial, the district judge cautioned the jury not to consider evidence of

---

3. The Court explicitly proclaimed that the principles laid down in *Strickland* "should apply to federal collateral proceedings" like this one. —— U.S. at ——, 104 S.Ct. at 2070.

4. To the extent that *United States* ex rel. *Cosey v. Wolff*, 727 F.2d 656 (7th Cir.1984), divides this burden between the defendant and the government and requires the government to show lack of prejudice from defendant's counsel's deficient

conduct, *Cosey* is inconsistent with *Strickland* and is therefore overruled.

5. Subsequent to the trial, this conviction was reversed on appeal, but there is no allegation that the reversal is material to the Section 2255 proceeding. See also, *United States v. Payne*, 635 F.2d at 646 n. 5.

other offenses in determining Payne's guilt or innocence of the conspiracy charge for which he was tried. 635 F.2d at 647. Payne has not shown that the jury disregarded these instructions. Especially in light of *Strickland's* directive that the jury is presumed to have "acted according to the law" and "reasonably, conscientiously, and impartially appl[ied] the standards that govern the decision" (—— U.S. at ——, 104 S.Ct. at 2068), this claim of ineffectiveness must be rejected.

### 2. Failure to Move for a Mistrial

■ Next, Payne claims his counsel ineffectively failed to move for a mistrial when Payne's several co-defendants pleaded guilty after the entire multi-count indictment was read to the jury. Payne claims that although the jury was not informed explicitly of the guilty plea, they must have inferred from the co-defendants' sudden absence from the trial that "the co-defendants plead [*sic*] guilty and that the defendant was holding out but was really guilty" (Br. at 21). This claim is without merit. Even assuming the co-defendants' absence created the impression Payne suggests,[6] this does not show that counsel's failure to request a mistrial was prejudicial to Payne. The judge cautioned the jury that it must determine Payne's guilt or innocence solely with regard to Count 1, the only count with which he was charged. 635 F.2d at 646. This cautionary instruction enabled the jury to act according to the law and reasonably apply the proper standards in reaching its decision. Payne's claim that counsel acted ineffectively in failing to seek a mistrial is rejected.

### 3. Failure to Move for Change of District

Payne claims that certain pretrial publicity made it impossible for him to obtain a fair trial in the New Albany division. Payne acknowledges that his counsel moved for a change of division, which the trial judge denied. However, Payne contends that this motion was improper, the proper motion being one for change of district. Further, he claims that counsel was also ineffective in failing to renew his motion after denial.

■ While moving for a change of division rather than a change of district may have been an error, it is not of sufficient magnitude to establish that Payne's counsel was ineffective. There was no showing that the trial judge denied the motion because it was technically improper. Rather, it is apparent that the judge did not believe any change of venue was necessary to protect the fairness of the proceedings. There is nothing to show that counsel's error in phrasing his motion had any effect whatsoever on the judge's decision to deny the motion or on the outcome of the proceedings. Furthermore, there was nothing unreasonable in Payne's counsel's failure to renew his request, so this failure provides no basis for finding that counsel was ineffective.

### 4. Failure to Object to Co-Conspirators' Hearsay Testimony

■ Payne complains that his co-conspirators gave hearsay testimony damaging to Payne, in the absence of a determination, required by *United States v. Santiago*, 582 F.2d 1128, 1131 (7th Cir.1978), that there was sufficient non-hearsay evidence to establish the conspiracy. Payne claims his counsel ineffectively failed to object to the testimony's admission under those circumstances.

In *United States v. Santiago*, 582 F.2d 1128, 1131 (7th Cir.1978), this Court stated that co-conspirators' statements may be admitted conditionally even before the conspiracy is independently established, so long as sufficient evidence is ultimately presented. While counsel may have erred in failing to object contemporaneously to co-conspirators' hearsay statements, this failure did not prejudice Payne because there was sufficient independent evidence of his participation in the conspiracy to

---

6. It was equally possible for a jury to have inferred that Payne was "holding out" because, unlike his co-defendants, he was really innocent.

make the hearsay testimony proper under *Santiago.* The following chain of testimony is merely one example of the independent evidence presented by the government. Co-conspirator Hines testified that he delivered Payne several stolen vehicles and vehicle parts between 1973 and 1978 (Tr. 63, 70–73, 106–108). Detective Sergeant Hays, Indiana State Police Vehicle Theft Section, testified that the title of one of these stolen vehicles (a 1973 Buick Century) was traced by confidential vehicle identification number (VIN) to ultimate owner Marsha Smith, who had purchased the vehicle (Tr. 401). However, the more prominently displayed VIN on Smith's vehicle indicated that it had previously been owned by William Riley Gibson (Tr. 399–400). The Director of the Indiana Bureau of Motor Vehicles Title Department testified that after Gibson's vehicle had been totalled, its title had been signed over to Payne (Tr. 180). Hays testified that the VIN plate from Gibson's totalled vehicle sold to Payne had been transferred to the car, stolen by Hines and also sold to Payne, which was ultimately sold to Smith (Tr. 402). Thus the independent nonhearsay evidence showed Payne's involvement in a conspiracy to transport across state lines and sell stolen vehicles, and it would have amply supported a *Santiago* determination. Because the co-conspirators' hearsay evidence would have been admissible even if Payne's counsel objected, his failure to object did not prejudice Payne and provides no basis, under *Strickland,* for a determination that counsel was ineffective.

### 5. Failure to Discover a Complete Defense

Finally, Payne asserts that trial counsel ineffectively overlooked an important defense and therefore failed to argue that no overt act took place within conspiracy limitation period. See 18 U.S.C. § 3282.

Payne contends now that there were significant physical discrepancies between the vehicle described at trial and the vehicle identified in the indictment (overt acts 16–19) which made it physically impossible for the trial vehicle to be the indictment vehicle. Payne claims that if counsel had obtained a specific bill of particulars or requested a continuance to inspect the truck, he would have discovered these discrepancies and allegedly would have been able to challenge the testimony of certain witnesses, to present rebuttal testimony and request instructions different from those ultimately given the jury. With this extra evidence and instructions, Payne claims, "the jury may have returned a not guilty verdict" (Br. 19) or at least would have been "inclined to acquit" (Reply Br. 5).

 There is no basis for finding that counsel acted ineffectively in failing to request a more specific bill of particulars. It is undisputed that a standard bill of particulars, requested earlier in the case, had been denied by the district judge. Counsel had no duty to renew or expand the request after this denial.[7]

 Payne's claim that counsel should have requested a continuance does not overcome the strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. —— U.S. at ——, 104 S.Ct. at 2061. While it might have been useful for counsel to request such continuance, we cannot conclude that the failure to do so was unreasonable, especially in light of counsel's efforts, even in absence of the continuance, to plant doubt in the minds of the jurors about the identity of the truck. *E.g.,* Oct. 9, 1979 Tr. at 36–40; see also note 9 *infra.*

Furthermore, even assuming that Payne's counsel's conduct was ineffective, Payne has not established under the *Strickland* test that he was prejudiced as a

---

7. Payne complains also that his counsel ineffectively failed to appeal the court's denial of the request for a bill of particulars. However, Payne retained counsel other than the trial counsel for his direct appeal so that failure to raise this issue on appeal cannot be solely trial counsel's responsibility. Even though this Section 2255 appeal has been made by a third attorney (Payne's son), there has been no allegation that the appellate counsel for the direct appeal was inadequate.

result. Payne contends only that he might have been acquitted if his counsel performed differently. He has not demonstrated, as required in *Strickland,* that there was "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." —— U.S. at ——, 104 S.Ct. at 2066.[8] Furthermore, on the basis of the evidence presented in this case, the Court concludes that there was no probability of a different result even if Payne's counsel had presented the allegedly "complete" defense.

Payne argues, in essence, that the truck described at trial (the Fox truck) was not the truck identified in the indictment as stolen and could not contain parts stolen from the indictment truck. In reaching this conclusion, Payne relies on the facts that: (1) the VIN on the Fox truck was the VIN "that it was legally supposed to have" (Pl.Br. 15); (2) the warranty tag on the cab of the Fox truck was missing, and (3) the Fox truck was a vehicle larger than the stolen vehicle. However, the evidence adduced at trial showed that the accessible VIN for the Fox truck, on the door of the cab, was missing and the "proper" VIN was discovered only when Detective Sergeant Hays crawled under the vehicle and scraped the paint off the truck frame's repainted surface (Tr. 374–375, 378). Joseph Hines, a co-conspirator of Payne's, testified that the cut-up parts of the stolen truck were delivered to Payne (*id.* at 101–108), and Robert Fox testified that the

truck he purchased from Payne in 1978 (the Fox truck) could have contained at least some parts from a truck the size of the stolen truck (*id.* at 519–520; see also *id.* at 20). Also, Hays testified that the VIN numbers had been altered on many of the stolen vehicles connected with Payne in the proceeding (Tr. 365–402).

■■ This testimony provided ample evidence from which a jury could conclude that the truck Payne sold Fox contained some parts from the stolen truck, even if Payne's counsel had presented the allegedly "complete" defense. While it is not impossible that the jury would have decided to acquit Payne on the basis of this defense, it is certainly improbable, given the fact that Payne's defense evidence would merely contradict the substantial and strong testimony of police experts, government record keepers, theft victims, buyers of Payne's vehicles, and Payne's co-conspirators. In determining whether to believe Payne's evidence or these witnesses, it is probable that the jury would believe these witnesses. For all these reasons, we reject Payne's claim that counsel ineffectively failed to discover a defense.[9]

In conclusion, despite Payne's claims to the contrary, it is apparent that Payne's trial counsel's conduct did not fall below constitutional standards. Payne's claims of ineffectiveness do not amount to an allegation that his counsel's "conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied

---

**8.** The claim that counsel erred in failing to request different instructions must fail especially because there has been no showing of prejudice under the *Strickland* test.

**9.** Payne argues that counsel's comment, near the end of the trial, to the effect that counsel had less than optimum opportunity to interview an apparently last-minute witness, shows that counsel was unprepared and therefore ineffective. This claim is without merit. Counsel's examination and cross-examination of witnesses and the nature of his objections throughout the trial evidence adequate familiarity with the case which could only have been obtained through sufficient preparation. For example, counsel called and questioned eleven witnesses, including a banker and other business associates of

Payne, in Payne's behalf. Counsel subjected government witness Hines to a strenuous cross-examination which showed detailed understanding of Hines' character and his significance to the government's case (Oct. 9 Tr. at 122–137). His cross-examination of government witness Miller included an attempt to show Miller's bias for the government (Oct. 10 Tr. at 316). He made several efforts to challenge the identity of the Ford truck (Oct. 11 Tr. at 428–429, 451, 454). He objected to the admission of government evidence (*e.g.,* Oct. 9 Tr. at 36–40) and to leading questions (*e.g.,* Oct. 9 Tr. at 93–94). He moved for a directed verdict on the basis of insufficient evidence (Oct. 11 Tr. at 473–480). These examples of counsel's trial conduct show that he was adequately prepared.

on as having produced a just result." ── U.S. at ──, 104 S.Ct. at 2064; see also *Wade v. Franzen,* 678 F.2d 56, 59 (7th Cir.1982). Rather, "the alleged incompetence consists of at most a series of discrete blunders [which] neither singly nor in combination * * * were prejudicial." *Franzen,* 678 F.2d at 59. Under these circumstances, the district court's denial of Payne's Section 2255 motion must be affirmed.

### B. Rule 60(b)(3) motion

▆▆▆▆ Rule 60(b)(3) authorizes the district court, upon motion and in exceptional circumstances, to relieve a party from a final order or judgment. The district court has broad latitude in making Rule 60(b) determinations, and it is well established that this Court will reverse such a determination only if the district court has abused its discretion. *Simons v. Gorsuch,* 715 F.2d 1248, 1253 (7th Cir.1983); *Ervin v. Wilkinson,* 701 F.2d 59, 61 (7th Cir.1983); *Bradford Exchange v. Trein's Exchange,* 600 F.2d 99, 102 (7th Cir.1979). When, as here, a party seeks relief from judgment due to fraud, under Rule 60(b)(3) the movant must establish fraud by clear and convincing evidence. *Ervin,* 701 F.2d at 61. In reviewing the evidence to determine whether the district court's denial constituted an abuse of discretion, this Court must accept as true the movant's undenied allegations. *Id.*

▆▆▆ Payne seeks Rule 60(b)(3) relief from the district court's February 10, 1983, order granting the government's January 20, 1983, motion to dismiss Payne's Section 2255 motion. He attached to his motion an affidavit stating that he had never received service of the government's motion to dismiss. He claimed in his motion that service was not received because the motion was sent to the wrong address. It is not disputed that the typed certificate of service, attached to the government's motion, lists an incorrect zip code for Payne.[10] However, in its response to Payne's Rule 60(b)(3) motion the government states that the inclusion of an incorrect zip code on the certificate of service was a clerical error made when the certificate was being typed. The government asserts that the motion itself was mailed to Payne at his correct address because a preprinted label with the correct zip code had been affixed to the envelope containing the motion. A counterpart correct address label was attached to the motion as Exhibit A. Also, the government contested Payne's affidavit statement that he never received the motion. The government urged that Payne's knowledge that the certificate address was incorrect showed that he had in fact received the motion.

The district court did not abuse its discretion in denying Payne's Rule 60(b)(3) motion on the basis of these facts. The court could reasonably conclude by reviewing the counterpart preprinted label that the motion was mailed to the correct address, despite the address error on the certificate. Mailing the motion to the correct address fully satisfied the government's obligation to serve Payne, without regard to whether or not service was received or the certificate address was correct.[11] Fed.R.Civ.P. 5(b) makes quite clear that "service by mail is complete upon mailing."

The district court's denial and dismissal of Payne's Rule 60(b)(3) motion is affirmed.

---

10. Payne's zip code is Austin, Indiana 47102. The certificate of service lists the zip code as Austin, Indiana 47808. The zip code 47808 is the zip code for Terre Haute, Indiana.

11. Nevertheless, the certificate of service is normally a strong indication of the address to which service was made. For this reason, the government is exhorted to use due care to assure that the certificate address is accurate.