Louis SIANO, Plaintiff, Appellant,

v.

JUSTICES OF MASSACHUSETTS, et al., Defendants, Appellees.

No. 82–1467.

United States Court of Appeals, First Circuit.

Argued Nov. 5, 1982.

Decided Jan. 21, 1983.

Rehearing Denied Feb. 4, 1983.

John Cavicchi, Boston, Mass., for plaintiff, appellant.

Roberta Thomas Brown, Asst. Atty. Gen., Boston, Mass., Chief, Torts Division, with whom Francis X. Bellotti, Atty. Gen., Boston, Mass., was on brief, for Justices of Mass., et al.

John T. McDonough, Springfield, for Matthew J. Ryan, Jr.

Before COFFIN, Chief Judge, BOWNES and BREYER, Circuit Judges.

BOWNES, Circuit Judge.

Plaintiff-appellant Louis Siano appeals the dismissal of his action against the Justices of Massachusetts and Matthew J. Ryan, Jr., District Attorney of Hampden County, Massachusetts, pursuant to Fed.R. Civ.P. 12(b)(6), "for failure to state a claim upon which relief can be granted." In our review we must therefore accept the allegations in the complaint as true. *Conley v. Gibson,* 335 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957); *O'Brien v. DiGrazia,* 544 F.2d 543, 545 (1st Cir.1976), *cert. denied,* 431 U.S. 914, 97 S.Ct. 2173, 53 L.Ed.2d 223 (1977).

> The complaint alleges that the
> action arises under the United States Constitution, particularly under the provisions of the First, Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution, under federal law, particularly Title 28 of the United States Code, Section 2201, 2202, and Title 42 of the United States Code, Sections 1983, 1985.[1]

Jurisdiction is based on 28 U.S.C. §§ 1331 and 1343. The factual background of the case, which is inextricably intertwined with prior proceedings in the Massachusetts' courts, is important for an understanding of the issues.

*The State Proceedings*

In 1972, Siano was a concessionaire at the Eastern States Exposition Fair Grounds and a member of a committee which investigated the Exposition's income. In his role as committee member, Siano charged that defendant Ryan and others were defrauding the Exposition of certain income. According to Siano, Ryan told him that he would be sorry.

On July 3, 1972, a garage owned by Siano and his mother was destroyed by an explosion followed by a fire. Siano was present when the explosion and fire occurred and

---

**1.** In his brief Siano maintains that the action against the Justices is based solely on the Declaratory Judgment Act, 28 U.S.C. § 2201, 2202. At oral argument, when questioned about the legal basis of this action, counsel stated that action was brought pursuant to 42 U.S.C. § 1983. Our review proceeds on the assumption that Siano is alleging a violation of his rights by the Justices pursuant to section 1983 and is seeking as relief a declaratory judgment that his conviction is invalid.

observed several youngsters standing near the garage. He filed a "proof of loss" form with his insurer, United States Fidelity and Guarantee Co. (USF&G), claiming $2,500 for damage to the building and $5,000 for contents. This form was filled out in long-hand, notarized by Siano's attorney, and signed by both Siano and his mother. Before submitting the form to USF&G, Siano made a photocopy of it and stored it in a freezer at his family restaurant.

Siano alleges that before signing the form he added the following language (the "disclaimer clause"):

> I have reason to believe that the night before and the morning of the fire that the garage was broken into and a lot of material was stolen. I do not want to cheat the insurance company so I am willing to compromise so it will be fair to the insurance co and me. Thank you.

The proof of loss form relied on by USF&G (hereinafter referred to as "Exhibit # 16," its designation in the state court proceedings) contained no such disclaimer, and USF&G did not honor Siano's claim. Instead, it turned the "proof of loss" over to the Hampden County District Attorney. Siano was subsequently indicted for arson and for filing a false claim in an attempt to defraud his insurance company.[2]

The prosecutor at Siano's state court trial was an assistant district attorney. According to Siano, Ryan was present in the courtroom each day of the trial, and "was like an animal in the hallway in the presence of the jurors of the court, the court officers and wittnesses [sic]." After a private investigator had testified on Siano's behalf, Ryan allegedly yelled at this witness, swearing that he had no right to testify. Siano further alleged that the presiding judge and three of the jurors were friends of Ryan.[3]

The trial judge directed a verdict in Siano's favor on the arson charge. Siano was, however, convicted by the jury of having filed a fraudulent insurance claim, and sentenced to a three-year probation term. He filed a bill of exceptions, all of which were overruled by a rescript opinion.

Two and one-half years after his conviction, Siano went to his attorney's office to review his case. He was shown a copy of Exhibit # 16, the proof of loss form introduced at his trial. Siano then realized that this form did not contain the disclaimer clause, and that the signatures on the form were neither his nor his mother's. Siano retrieved his copy of the proof of loss from his freezer, and on the basis of the two documents filed a motion for a new trial. This motion was denied by the Superior Court, and affirmed upon appeal to the Appeals Court. On June 2, 1980, the Massachusetts Supreme Judicial Court denied Siano's application for further appellate review.

Siano commenced his first civil action in the Massachusetts courts in April 1979. In this civil action, he sought multimillions of dollars in damages against USF&G, alleging that the insurance company had caused a forged proof of loss to be delivered to Ryan. Siano's suit was based on intentional infliction of emotional distress. Ten special questions were submitted to the jury, which found: that the signatures of Siano and his mother on Exhibit # 16 were forged; that USF&G knew that the signatures were forged; that USF&G voluntarily delivered the forgery to the district attorney; that USF&G's conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency"; and that, although USF&G did not intend to inflict emotional distress upon Siano, it should have known that its conduct was likely to have such an effect. As compensation for the emotional distress suffered, the jury awarded Siano $22,500 damages.

Following the jury award, USF&G filed a motion for judgment notwithstanding the verdict on the ground that Siano's tort

---

**2.** If the contents of the garage had previously been stolen, any insurance claim for their value would be fraudulent. The disclaimer clause would, however, obviate any finding of fraudulent intent.

**3.** The record before this court does not indicate whether Siano objected to any of these alleged infirmities during the trial.

claim was time-barred by the applicable statute of limitations. The motion was granted. The court found that Siano, in the exercise of ordinary diligence, should have become aware of the alleged forgery when Exhibit # 16 was both read and shown to him at his criminal trial more than five years earlier. In dicta, the court gave two additional reasons for granting USF&G's motion. First, because Siano had twice before litigated and lost the forgery issue—at the criminal trial and subsequently on his motion for a new trial—the doctrine of collateral estoppel would prevent Siano from again litigating this issue. Second, the court expressed grave reservations as to the sufficiency of the evidence to sustain the jury's finding that USF&G knew that Exhibit # 16 was a forgery.

*The Federal Proceedings*

On July 21, 1980, while USF&G's motion for judgment notwithstanding the verdict was still pending, Siano filed this civil action in federal district court against USF&G, District Attorney Ryan, and the Justices of Massachusetts. Siano alleged that Ryan and the insurance company conspired together to use forged evidence to obtain a criminal conviction against him. Ryan's alleged motivation was retaliation for the fraud accusations which Siano had made against him. Siano sought damages of $104,000,000 against these defendants. As against the Justices, Siano alleged that they repeatedly affirmed his conviction, knowing that it was based on forged evidence and sought a declaratory judgment that his state conviction was invalid.

A United States magistrate recommended dismissal of the complaint as to all defendants. Siano filed objections, which were reviewed by the district court. The district court accepted the recommendation of dismissal as to the Justices and Ryan,

directed entry of final judgment on behalf of these two defendants, and denied Siano's motion for summary judgment. It is this order which is before us.

*The Claim Against The Justices*

Siano's suit against the Justices of Massachusetts does not seek monetary damages as compensation for the alleged violations of his constitutional rights.[4] Rather, Siano attempts to use the section 1983 claim as a method of challenging the validity of his state court conviction and seeking a new trial. The relief sought by Siano is more akin to that provided in a habeas corpus action pursuant to 28 U.S.C. § 2254. Siano is precluded from filing a habeas petition since he has served out his parole term, and thus no longer satisfies the "in custody" requirement of federal habeas relief. Siano's claim against the Justices presents an issue of first impression in this circuit: Does a 42 U.S.C. § 1983 action lie to attack the validity of a state court conviction when state avenues of appeal have been exhausted and the petitioner is no longer in custody.

The district court below, in dismissing Siano's action against the Justices, relied on the view expressed in earlier Fifth and Seventh Circuit opinions—"a view which I believe the First Circuit Court of Appeals would adopt if squarely presented the issue—that an action pursuant to 42 U.S.C. § 1983 cannot be used to attack the validity of a state court conviction. *Hanson v. Circuit Court of First Judicial Circuit,* 591 F.2d 404, 410–11 (7th Cir.) *cert. denied,* 444 U.S. 907[, 100 S.Ct. 220, 62 L.Ed.2d 143] (1979); *Cavett v. Ellis,* 578 F.2d 567, 568–69 (5th Cir.1978)." While Siano's case squarely poses the issue, and the Fifth Circuit's rule is likely to be recognized as the law, we do not presently rest our decision on this point.[5]

---

**4.** Siano correctly perceives that he is precluded from bringing a section 1983 damages action against the Justices by the doctrine of judicial immunity. See *Stump v. Sparkman,* 435 U.S. 349, 356–57, 98 S.Ct. 1099, 1104–1105, 55 L.Ed.2d 331 (1978).

**5.** The federal appellate courts which have directly addressed this issue, which implicates

the writ of habeas corpus and comity between the state and federal courts, have reached diametrically opposed results. The Fifth Circuit is the leading proponent of the view that a section 1983 action can never be used to attack the integrity of a state criminal conviction. In *Cavett v. Ellis,* 578 F.2d 567 (5th Cir.1978), an individual who had finished serving his state prison term sought a declaratory statement

Siano's case is easily disposed of on other grounds. Therefore, for purposes of this appeal, we will assume, without deciding, that an individual in Siano's situation could sustain a cause of action for a declaratory judgment as to the validity of a state court conviction under 42 U.S.C. § 1983.

To prevail upon his section 1983 claim, Siano must demonstrate that the Justices, acting under color of Massachusetts law, deprived him of a right secured by the federal Constitution or federal law. This, he has failed to do.

■ Siano alleges no errors in evidentiary rulings made during his trial, nor does he claim that the state's procedures were constitutionally infirm. His only allegation is that the state court Justices reached a wrong result by not accepting his "proof" of the alleged forgery. There is, however, no federally created right to have a state judge reach a particular result. The federal courts exercise no supervisory powers over the state courts. A state court decision, if rendered in accordance with constitutional requirements, will not be overturned by a federal court, even if it appears that the wrong result was reached. Siano's trial and ultimate conviction transgressed no federally created right and therefore must stand. The state court's denial of Siano's motion for a new trial also passes section 1983 scrutiny. There is no federally created right to have a state judge grant a new trial motion. *Griffin v. Illinois,* 351 U.S. 12, 18, 76 S.Ct. 585, 590, 55 L.Ed.2d 1055 (1956). We therefore affirm the dis-

that his criminal convictions were unconstitutionally invalid. The Fifth Circuit found that:

> Stripped to the bone, the plaintiff's action under § 1983 is little more than a habeas corpus action without a custody requirement. We do not believe that § 1983 was meant to be a substitute for habeas corpus when there is no custody.... Under his theory of § 1983, the appellant would have us sit in perpetual review of all criminal decisions. We will not make the appellant's § 1983 action the greater writ by avoiding the custody requirement of § 2254 indirectly while refusing to extend the custody requirement directly.

*Id.* at 569 (citation omitted). The court put forth two interests which it felt justified its ban on section 1983 actions—the states' interest in the finality of their criminal convictions, and the amount of judicial time which review of section 1983 actions would consume. *See also Delaney v. Giarruso,* 633 F.2d 1126, 1128 (5th Cir.1981) (per curiam) (section 1983 action precluded whenever the petitioner seeks to attack the validity of a state court conviction, even when the remedy sought is monetary).

A nearly identical stance has been adopted by the Seventh Circuit. In *Hanson v. Circuit Court of the First Judicial Circuit,* 591 F.2d 404 (7th Cir.), *cert. denied,* 444 U.S. 907, 100 S.Ct. 220, 62 L.Ed.2d 143 (1979), the court was faced with a section 1983 action filed by a petitioner whose criminal conviction resulted only in the imposition of a fine. The court dismissed this action for failure to state a claim for which relief could be granted, finding that:

> Congress intended that habeas corpus provide not only the exclusive federal remedy for those in custody, but also the exclusive federal remedy for all who seek to attack state court judgments of convictions. Thus, convictions not subject to question in habeas

are immune from collateral inquiry by the federal courts....

> ....

> ... Direct review by the United States Supreme Court is sufficient to preserve the role of the federal courts as the ultimate guardians of federally guaranteed rights.

*Id.* at 410–11. *See also Waste Management of Wisconsin, Inc. v. Fokakis,* 614 F.2d 138, 141 (7th Cir.1980).

Two other circuits have reached the opposite result, finding that a section 1983 action may at times be an appropriate vehicle for challenging the validity of a state court conviction. In *Shipp v. Todd,* 568 F.2d 133 (9th Cir.1978) (per curiam), a former state prisoner brought a section 1983 action, seeking a declaratory statement that his conviction was invalid and expungement of his criminal records. The circuit court reversed the district court's dismissal of the action, explaining that: "Although appellant has served the sentences imposed, ... the maintenance of his criminal records continues to operate to his detriment." *Id.* at 133 (citations omitted). Similarly, the Fourth Circuit assumed, without discussion, that a section 1983 action could in certain circumstances be an alternate method of collaterally attacking a state criminal conviction. *Strader v. Troy,* 571 F.2d 1263, 1269 (4th Cir.1978). *See also Rimmer v. Fayetteville Police Department,* 567 F.2d 273, 275 (4th Cir.1977).

The Supreme Court has not yet considered the scope of section 1983 actions challenging the constitutionality of state court convictions, though it has acknowledged that "the demarcation line between civil rights actions and habeas petitions is not always clear." *Wolff v. McDonnell,* 418 U.S. 539, 579, 94 S.Ct. 2963, 2986, 41 L.Ed.2d 935 (1974).

trict court's dismissal of Siano's claim against the Justices, finding that, even if his section 1983 action is cognizable, he has failed to allege any constitutional infirmity leading to his conviction.[6]

*The Claim Against The State Prosecutor*

Siano's suit against Ryan seeks monetary damages under section 1983 for allegedly initiating a prosecution in bad faith and using tactics during Siano's trial offensive to due process and a fair trial. Ryan maintains that the doctrine of absolute prosecutorial immunity shields him from all liability.

■ When initiating a prosecution and presenting the state's case, a prosecutor is absolutely immune from a civil suit for damages under section 1983. *Imbler v. Pachtman,* 424 U.S. 409, 431, 96 S.Ct. 984, 995, 47 L.Ed.2d 128 (1976). Actions which would result in damages liability if performed by another state actor, remain uncompensated if performed by a state prosecutor. This prosecutorial immunity does not reflect judicial or societal approval of prosecutorial misconduct. Rather, the doctrine of prosecutorial immunity reflects a balance between an individual's right to be treated fairly by prosecutors and society's need to keep the criminal justice system functioning without undue interference and protracted delay.

As the Supreme Court has recognized, the doctrine of prosecutorial immunity is not cost-free. "To be sure, this immunity does leave the genuinely wronged defendant without civil redress against a prosecutor whose malicious or dishonest action deprives him of liberty." *Id.* at 427, 96 S.Ct. at 993. These costs, however, are justifiable. Prosecutorial immunity allows the honest prosecutor to meet his/her responsibilities, free of the constraint of constantly considering potential liability for damages. "[T]he alternative of qualifying a prosecutor's immunity would disserve the broader public interest. It would prevent the vigorous and fearless performance of the prosecutor's duty that is essential to the proper functioning of the criminal justice system." *Id.* at 427–28, 96 S.Ct. at 993–994 (footnote omitted). Prosecutorial immunity permits a prosecutor to concentrate his/her efforts on enforcing the criminal law. The prosecutor need not divert energy and attention to defending damage suits brought by disappointed criminal defendants. "Such suits could be expected with some frequency, for a defendant often will transform his resentment at being prosecuted into the ascription of improper and malicious actions to the State's advocate." *Id.* at 425, 96 S.Ct. at 992 (citation omitted). Similarly, the doctrine conserves judicial time and effort. Various post-trial proceedings, other than a section 1983 damages action against a prosecutor, are available to ensure that a criminal defendant was fairly convicted. In sum, the doctrine of prosecutorial immunity serves both to protect the functioning of the criminal justice system and to further its goal of determining guilt or innocence accurately.

**6.** We also note that Siano would be collaterally estopped from litigating the issue of forgery in a federal forum. Siano already has had two full and fair opportunities to present proof of the forgery to the Massachusetts state courts. His conviction following trial and the denial of his motion for a new trial necessarily imply that the state courts did not accept his "proof." We accord preclusive effect to these state court determinations, because, as the Supreme Court explained:

nothing in the language or legislative history of § 1983 proves any congressional intent to deny binding effect to a state-court judgment or decision when the state court, acting within its proper jurisdiction, has given the parties a full and fair opportunity to litigate federal claims, and thereby has shown itself willing and able to protect federal rights.... There is, in short, no reason to believe that Congress intended to provide a person claiming a federal right an unrestricted opportunity to relitigate [via a section 1983 action] an issue already decided in state court simply because the issue arose in a state proceeding in which he would rather not have been engaged at all.

*Allen v. McCurry,* 449 U.S. 90, 103–04, 101 S.Ct. 411, 419–420, 66 L.Ed.2d 308 (1980) (footnote omitted). *See also Mastracchio v. Ricci,* 498 F.2d 1257, 1260 (1st Cir.1974) ("a state criminal conviction can have a collateral estoppel effect upon a federal civil rights action"), *cert. denied,* 420 U.S. 909, 95 S.Ct. 828, 42 L.Ed.2d 838 (1975).

A prosecutor's absolute immunity is narrowly circumscribed, encompassing only those actions necessary "in initiating a prosecution and in presenting the State's case." *Id.* at 431, 96 S.Ct. at 995. This immunity, thus, extends only to those actions which can be characterized as "quasi-judicial." The very nature of the judicial process grants some assurance to a criminal defendant that he/she will not become the victim of a dishonest prosecutor. If a prosecutor maliciously initiates a prosecution, the trial that follows should normally vindicate the defendant. Similarly, when a prosecutor wrongfully presents evidence knowing it to be false, or otherwise engages in trial misconduct, "jury discretion is brought to bear in evaluating the persuasiveness of the prosecution's presentation, and defense counsel enjoys the opportunity to employ a variety of procedural devices to challenge the accuracy of the Government's position and thereby to preserve the integrity of the truthseeking enterprise." *Briggs v. Goodwin,* 569 F.2d 10, 24 (D.C.Cir.1977), *cert. denied,* 437 U.S. 904, 98 S.Ct. 3089, 57 L.Ed.2d 1133 (1978). Although not foolproof, the indictment and trial process is the best safeguard against the misuse of prosecutorial immunity.

■ Turning to the specific allegations of prosecutorial misconduct, we find that Siano has no right to civil redress for any of Ryan's alleged actions. Ryan's decision to initiate the prosecution of Siano unquestionably qualifies for immunity under *Imbler. See id.* at 23. This is so even if Ryan's actions "may have been undertaken maliciously, intentionally, and in bad faith." *Norton v. Liddel,* 620 F.2d 1375, 1379 (10th Cir.1980).

Nor can Ryan's alleged actions in connection with Siano's trial give rise to liability. Ryan's presence in the courtroom constitutes no violation of Siano's rights. The trial was open to all members of the public, including Ryan. Moreover, Ryan's presence was fully justifiable, since an assistant district attorney, under Ryan's supervision, was presenting the government's case. Similarly, Siano's dramatic claim that Ryan "was like an animal in the hallway" alleges no violation of a federally created right. Even if Ryan did yell at a private investigator, "swearing that he had no right to testify," no harm resulted; this witness had already testified. Thus, wholly apart from prosecutorial immunity, Siano has failed to allege any federally cognizable prosecutorial misconduct during the trial.[7]

Finally, though the pleadings are not clear on this, Siano may be alleging that Ryan knowingly allowed the Commonwealth to use forged evidence in obtaining his criminal conviction. Such an action, while heinous, nonetheless falls within the ambit of Ryan's absolute prosecutorial immunity.[8] *See Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976); *Henzel v. Gerstein,* 608 F.2d 654, 657 (5th Cir.1979); *Heidelberg v. Hammer,* 577 F.2d 429, 432 (7th Cir.1978).

The judgment of the district court dismissing Siano's claims against Ryan for failure to state a claim for which relief can be granted is affirmed.

*Affirmed.*

---

**7.** Siano also alleges that the judge and three of the jurors were friends of Ryan. Even accepting this allegation as true, it establishes no impropriety in Ryan's behavior. Siano was free to challenge the composition of the jury, petition the judge to recuse himself, or move for a new trial.

**8.** We realize that the absolute immunity granted in *Imbler* extends only to a prosecutor's action in initiating a prosecution and present-

ing the government's case. "[T]his absolute immunity does not extend to acts essentially unrelated to the judicial process, i.e., acts done in the prosecutor's investigatory role." *Guerro v. Mulhearn,* 498 F.2d 1249, 1256 (1st Cir.1974) (citations omitted). Since all of Ryan's alleged misconduct concerned only the actual prosecution of Siano, and was well within the scope of absolute immunity, we need not consider the doctrine of qualified prosecutorial immunity.