Nicholas V. CELIA, Jr.,
Plaintiff, Appellant,

v.

William C. O'MALLEY and Joseph P.
Gaughan, Defendants, Appellees.

No. 90–1455.

United States Court of Appeals,
First Circuit.

Heard Sept. 11, 1990.

Decided Nov. 16, 1990.

James A. Frieden, with whom Victor Aronow and Salon & Danis, were on brief, for plaintiff, appellant.

Roberta T. Brown, Sp. Asst. Atty. Gen., with whom James M. Shannon, Atty. Gen., was on brief, for defendants, appellees.

Before CAMPBELL, Circuit Judge, COFFIN, Senior Circuit Judge, and SELYA, Circuit Judge.

LEVIN H. CAMPBELL, Circuit Judge.

Nicholas Celia appeals from the district court's dismissal of his complaint and denial of his motion to amend or reconsider. In his complaint, Celia alleged that the defendants, District Attorney O'Malley and Assistant District Attorney Gaughan, caused him to be tried in the state court for stealing 2.2 pounds of cocaine from the police drug evidence room without first having presented to the grand jury evidence linking him to that crime. Having been acquitted by the jury in the state trial, Celia brought this federal action against city and county officials under 42 U.S.C. § 1983.

The district court dismissed Celia's claims in part because of defendants' prosecutorial immunity and in part because of plaintiff's failure to state a claim upon which relief may be granted. The pendent state claims alleging violation of the Massachusetts Civil Rights Act (Mass.G.L. c. 12 § 11I), malicious prosecution, abuse of process, and slander were dismissed for lack of a viable federal question.

## I.

In July of 1984, 2.2 pounds of cocaine, valued at $500,000, was discovered missing from the evidence room of the Brockton Police Department. The disappearance of the cocaine was widely reported in the press, and an investigation of the theft was conducted by the police. This investigation ultimately focused on Nicholas Celia, a police officer who had worked in the Narcotics Division and had served fifteen years on the force.

Celia contends that the unprofessional way in which the investigation was conducted combined with discrepancies in the evidence made it virtually impossible to identify the person responsible for the theft. The investigation, he says, was handled by members of the police force rather than an outside agency; lie detector tests were allegedly given only selectively to members of the department. Celia also asserts that the investigators attempted to alter or destroy evidence and ignored evidence favorable to him.

Celia argues that, after failing to resolve the questions surrounding the disappearance of the cocaine, city and county officials attempted to fabricate a case against him. Celia was unable to account for small amounts of marijuana and cocaine which he had checked out of the evidence room but which police records indicated he had not returned. District Attorney O'Malley and Assistant District Attorney Gaughan presented evidence to two grand juries seeking an indictment of Celia for theft of drugs from the police department. Celia alleges that the evidence they presented related only to these small amounts of illegal drugs, not to the disappearance of the 2.2 pounds of cocaine. The second grand jury returned an indictment against Celia for theft of cocaine generally between March 1, 1982 and August 31, 1984.[1]

---

1. The indictment issued by the grand jury charged Celia with larceny of a control substance. It stated, in relevant part, that:
   Nicholas V. Celia of Brockton in the County of Plymouth, between the dates on or about March 1, 1982 and on or about August 31, 1984 did steal a Control Substance in Class B, to wit, COCAINE....

At the ensuing trial, the prosecution undertook to show that Celia was responsible for the theft of the 2.2 pounds of cocaine as well as of the smaller amounts of illegal drugs. After three days of trial, the jury acquitted Celia.

In his complaint under 42 U.S.C. § 1983, Celia alleged that he was deprived of his liberty and property without due process of law and was deprived of his right to be free from prosecution without either a preliminary finding by a judge or a grand jury indictment. Celia also asserted pendent state claims for violation of the Massachusetts Civil Rights Act, malicious prosecution, abuse of process, and slander. The district court dismissed the complaint, denied Celia's motion to amend his complaint and for reconsideration of the dismissal, and entered judgment for the defendants. This appeal followed.

## II.

Celia alleges that his civil rights were violated as a result of prosecutorial misconduct including prosecution without indictment, conspiracy among prosecutors and police, and misconduct in the investigatory process. Because the scope of prosecutorial immunity differs with respect to each of these types of conduct, we examine them individually.

### A. Prosecutor's "Quasi–Judicial" Function

■ The Supreme Court has held, and this court has accordingly also ruled, that a prosecutor enjoys absolute immunity from suit based on actions taken pursuant to his quasi-judicial function. In *Imbler v. Pachtman*, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976), the plaintiff sued a prosecutor under § 1983, claiming that he had knowingly used false testimony and suppressed material evidence at trial. Evaluating the scope of prosecutorial immunity, the Supreme Court held that "... in initiating a prosecution and in presenting the State's case, the prosecutor is immune from a civil suit for damages under § 1983." *Imbler v. Pachtman*, 424 U.S. 409, 431, 96 S.Ct. 984, 995, 47 L.Ed.2d 128 (1976). In *Siano v.*

*Justices of Massachusetts*, 698 F.2d 52 (1st Cir.1983), this Court held that a district attorney was immune from suit even when he instituted a prosecution in bad faith for the purpose of retaliation against the plaintiff. In *Campbell v. State of Maine*, 787 F.2d 776 (1st Cir.1986), we refused to recognize a "bad faith exception" to the scope of prosecutorial immunity as defined in *Imbler*.

The district attorney's alleged misfeasance here, prosecuting Celia for taking the 2.2 pounds of cocaine while having failed to present evidence of that offense to the grand jury, is less clearly outside the bounds of legitimate prosecutorial activity than was the conduct in *Imbler*. The indictment returned by the grand jury charged Celia with the theft of cocaine during a time period which included the disappearance of the larger amount of cocaine from the evidence room. Had the prosecutor not presented at trial whatever evidence he had concerning the 2.2 pounds of cocaine, the general indictment and subsequent acquittal would likely have foreclosed on double jeopardy grounds any further prosecution of Celia for that incident. Nevertheless, we need not decide whether the defendants' actions violated any of plaintiff's rights. Even so—even assuming, for example, that the prosecution of Celia violated his Sixth Amendment right to indictment by a grand jury or his due process rights—defendants' actions at the grand jury proceeding and later at trial fall squarely within the scope of prosecutorial immunity as defined by the Supreme Court in *Imbler v. Pachtman*.

Appellant urges this Court to acknowledge an exception to absolute prosecutorial immunity in situations in which a prosecutor causes a defendant to be tried for a felony without first having presented to a grand jury evidence of the particular criminal conduct sought to be shown. We decline, however, to carve out such an exception. Absolute immunity is afforded to prosecutors in their quasi-judicial role in order to ensure the independence and effectiveness of the criminal justice system. *See* 424 U.S. at 424–29, 96 S.Ct. at 992–94.

The presentation of evidence to a grand jury and the decision to try a defendant for a particular crime is at the heart of that system. Holding prosecutors liable for a discrepancy between the evidence presented to the grand jury and the issues raised at trial could discourage prosecutors from presenting the state's case fully at trial and could restrict needed flexibility in the presentation of evidence. *See id.*

Moreover, as the Supreme Court noted in *Butz v. Economou,* 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1977), "the safeguards built into the judicial system tend to reduce the need for private damage actions as a means of controlling unconstitutional conduct." *Id.* at 512, 98 S.Ct. at 2914. The checks inherent in the judicial process, including judicial supervision and the adversarial nature of the trial, reduce the likelihood of prosecutorial abuse. In the event that such abuse does occur, the judicial process provides mechanisms for mitigating any damages that might result. For example, errors caused by demonstrated prosecutorial misconduct during the trial might be reversible on appeal. Had Celia been convicted of the theft of the cocaine, he could have raised the indictment issue on appeal and sought reversal of his conviction on that basis.[2] Because of the importance of prosecutorial immunity to the effectiveness of the judicial process and in light of the safeguards inherent in the process itself, we decline to recognize the exception to the rule of prosecutorial immunity urged by appellant.

## B. *Conspiracy Theory*

Celia contends that, even if the defendants' actions fell within the scope of absolute prosecutorial immunity, the defendants conspired with non-immune parties and are, therefore, not immune from suit under § 1983. *See Malachowski v. City of Keene,* 787 F.2d 704 (1st Cir.1986); *San Filippo v. U.S. Trust Co. of New York,* 737 F.2d 246, 256 (2d Cir.1984). We need not address the merits of this contention, however, since neither Celia's original complaint nor his proposed amended complaint alleges a factual or legal theory of conspiracy. Celia did not present the conspiracy issue to the district court. His argument is, therefore, foreclosed on appeal. *See Greenwich Federal Savings & Loan Assoc. v. Fidelity Bond & Mortgage Co.,* 714 F.2d 183 (1st Cir.1983).

## C. *Administrative and Investigatory Functions*

With respect to prosecutorial functions outside the judicial realm, the scope of immunity is less clearly defined. Absolute immunity does not extend to a prosecutor's activities as administrator or investigator. *See Imbler v. Pachtman,* 424 U.S. at 430, 96 S.Ct. at 994; *Siano v. Justices of Massachusetts,* 698 F.2d at 52 n. 8. Therefore, Celia's claims based on the prosecutors' alleged involvement in the investigation and their statements to the press are not necessarily foreclosed by prosecutorial immunity. The district court found, however, that Celia had failed to articulate a sufficient factual basis "... on which one could predicate a finding of violation of a constitutional or other federal right." Thus, we now consider whether Celia's complaint stated grounds for relief under federal law.

Celia cites two types of conduct connected to the investigatory or administrative functions of the defendants that allegedly violated his constitutional rights. First, he argues that the defendants "made public statements that were designed to discredit and injure the plaintiff in his employment and reputation." With respect to alleged injury to reputation, however, the Supreme Court has held that "reputation alone, apart from some more tangible interests such as employment, [is not] by itself sufficient to invoke the procedural protection of the Due Process Clause."[3] *Paul v.*

---

**2.** We suggest only that Celia would have had the opportunity to raise such an argument on appeal; we do not decide here whether the indictment discrepancy was in fact constitutional error.

**3.** Although Celia alleges that the defendants' statements were designed to injure his employment interests, he does not allege that he actually suffered such injury as a result of the statements. Moreover, in his brief on appeal, Celia

*Davis,* 424 U.S. 693, 701, 96 S.Ct. 1155, 1160, 47 L.Ed.2d 405 (1975).

Appellant contends that the allegedly defamatory statements were made in connection with the deprivation of his constitutional right not to be tried without indictment by a grand jury. Therefore, he argues, the injury to his reputation meets the "defamation-plus" test of *Paul v. Davis.* *See* 424 U.S. at 701, 96 S.Ct. at 1160; *Gobel v. Maricopa County,* 867 F.2d 1201 (9th Cir.1989); *Marrero v. City of Hialeah,* 625 F.2d 499 (5th Cir.1980). However, both *Marrero* and *Gobel,* upon which appellant relies, involve the prosecutor's involvement in either an illegal search and seizure or an illegal arrest occurring in the course of his investigatory activities, conduct for which a prosecutor enjoys only qualified immunity. It is less clear that an alleged constitutional violation for which the defendant prosecutor enjoys absolute immunity can provide the "plus" needed to satisfy the "defamation-plus" test of *Paul v. Davis.*

We do not, however, reach that question here. Celia has not alleged facts sufficient to establish a connection between the alleged constitutional violation (viz., the right not to be tried without indictment) and the prosecutors' defamatory statements. In *Marrero,* the prosecutor had participated in an illegal search of the plaintiff's store and then made public statements suggesting that the inventory of the store consisted of stolen goods. *See* 625 F.2d at 517–19. The *Marrero* court stressed that, although the statements did not cause the violation, they were intimately connected to the search in the eyes of the public. *See id.* at 519. In *Gobel,* the illegal arrest and search had been filmed by the news media, and, in the course of the filming, the prosecutor had falsely accused the plaintiffs of criminal conduct. *See* 867 F.2d at 1205. Thus, in both of these cases, the alleged defamatory remarks were closely connected, in timing and in substance, to the independent constitutional violation.

does not assert injury to employment as a basis for his due process claim. Thus, we confine our

In contrast, Celia merely stated in his complaint that "[b]efore during and after the time that the Plaintiff was indicted, tried and acquitted, all of the Defendants embarked on a campaign of public statements which were widely reported in the press [and] designed to discredit and injure the Plaintiff in his employment and reputation." The complaint does not explain the nature of the statements, how they in fact injured his reputation, or how (and whether) they were connected to his alleged trial without indictment by a grand jury. The complaint thus fails to establish the necessary nexus between the purported independent constitutional violation and the defamatory statements, and, therefore, does not state a claim for relief under § 1983.

The second type of administrative or investigatory conduct that Celia claims violated his constitutional rights involves the prosecutors' participation in the investigation itself. Celia first alleges that the defendant prosecutors participated in the investigation, both in an active as well as a supervisory role. He then argues that the investigation of the theft of the 2.2 pounds of cocaine was conducted in an unprofessional way, citing among other deficiencies the attempted destruction of evidence. However, neither the original complaint nor the proposed amended complaint specifies how the investigative activities violated Celia's constitutional rights. For example, Celia does not allege that the police actually destroyed evidence nor does he explain how the attempted destruction of evidence deprived him of a fair trial. Moreover, he fails to link the inadequacies of the investigation to any specific conduct by the defendants. Thus, whether or not qualified immunity would protect the prosecutors in this instance, Celia's complaint fails to state a federal cause of action against defendants based on their involvement in the investigation.

### III.

In summary, we agree with the district court that the alleged actions of the prose-

analysis to the alleged injury to reputation.

cutors with respect to the indictment and trial fell within the scope of absolute prosecutorial immunity and that appellant's remaining allegations fail to state a claim under federal law.[4] The complaint was properly dismissed under Fed.R.Civ.P. 12(b)(6).

*Affirmed.*

---

**4.** We need not discuss plaintiff's motion to amend at any length. Having reviewed the papers, we find no reason to believe that plaintiff has belatedly unearthed a viable basis for a federal suit. Hence, the court below did not abuse its discretion in denying the motion to amend. *See Correa–Martinez v. Arrillaga–Belendez,* 903 F.2d 49, 59 (1st Cir.1990); *Dartmouth Review v. Dartmouth College,* 889 F.2d 13, 23 (1st Cir.1989).