Ramsay v. McCormack                    CV-98-408-JD  06/29/99
            UNITED STATES DISTRICT COURT FOR THE
                  DISTRICT OF NEW HAMPSHIRE


Ronald G. Ramsay

     v.                                Civil No. 98-408-JD

David S. McCormack, et al.


                          O R D E R


     The plaintiff, Ronald Ramsay, brought this action asserting

claims under state law and 42 U.S.C.A. § 1983.  Before the court

is the motion for summary judgment of defendant Kenneth Anderson,

individually (document no. 25).


                         Background

     On July 4, 1995, defendants Lieutenant Davis and Officer

Gilpatric, both of the Bridgewater Fire Department, assisted in

the arrest of the plaintiff by defendant Officer McCormack, a New

Hampshire State Police officer, on the property of the

plaintiff's son.  Earlier that day an altercation had arisen

between Davis, Gilpatric, and the plaintiff concerning a fire

permit, and Davis and Gilpatric had left to summon the assistance

of Officer McCormack before returning.

     As a result of the events of July 4, 1995, the plaintiff was

charged with interference with fire control personnel, simple

assault, disobeying an officer, and resisting arrest.  The

plaintiff's first trial on January 19, 1996, in the Plymouth District Court, ended in a mistrial because the trial was not successfully recorded.  As a result of testimony given during the first trial, Anderson became aware that the plaintiff allegedly pointed a rifle at the officers.  Thereafter, on January 22, 1996, a Grafton County Grand Jury returned a felony indictment against the plaintiff for criminal threatening, and on January 24, 1996, Anderson filed four informations against the plaintiff in the Grafton County Superior Court.  On February 5, 1996, Anderson nol prossed the Plymouth District Court complaints.

On October 11, 1996, Anderson prosecuted the Superior Court charges in the Grafton County Superior Court.  For a second time, however, the trial ended in a mistrial.[1]  A re-trial of the criminal threatening, interference with forest fire control personnel, and simple assault charges occurred in December, 1996, prosecuted by an assistant of Anderson.  However, apparently in a

---

[1]Although the record is ambiguous, the Superior Court charges appear to consist of both the information claims and the grand jury indictment.  The record indicates that the mistrial was the result of the court's conclusion that:  (1) based upon testimony at the trial a conviction on the felony charge was a probability; (2) such a conviction would be a miscarriage of justice; (3) the plaintiff's counsel in the criminal proceedings had committed a fraud upon the court; and (4) the plaintiff's best defense would be ineffective assistance of counsel.

2

second trial, Anderson prosecuted the resisting arrest and disobeying a police officer charges, on which the plaintiff was acquitted.[2]

The plaintiff contends that the charges were allegedly brought with malice, in the absence of probable cause, and for purposes other than bringing the plaintiff to justice.[3] He argues that in the process of prosecuting the charges, McCormack, Gilpatric, Davis, and Anderson conspired to fabricate evidence against him. Allegedly, blatant testimonial misrepresentations were made in an attempt to influence the court's opinion and impugn the plaintiff's character. Moreover, defendant Anderson supposedly misstated the law to the court, mischaracterized the authoritativeness of precedent, introduced evidence that was materially inconsistent and which he knew to be false, and repeatedly advanced arguments or adopted positions that were not reflective of the law.

On July 1, 1998, the plaintiff brought this action against

---

[2]The record is ambiguous as to the ultimate resolution of the specific charges, although it indicates that the plaintiff was acquitted of all charges heard by a jury, and any remaining charges were dismissed.

[3]Again, the record is ambiguous, although it appears that the plaintiff asserts that all of the charges against him were brought with malice.

the defendants asserting violations of his constitutional rights and claims under state law.  Although the complaint is ambiguous, it appears that only two counts implicate defendant Anderson.  Count five, asserting that the defendants recklessly and with callous disregard violated the plaintiff's rights by failing to supervise each other, and count six, asserting malicious prosecution.  The plaintiff does not contest this interpretation of his complaint.

## Discussion

Defendant Anderson moves for summary judgment on the grounds of absolute immunity.  In addition to his absolute immunity defense, he also contends that he is entitled to summary judgment on the plaintiff's claims of conspiracy on the grounds that the plaintiff cannot prove the existence of an agreement among two or more people.

## Standard

The role of summary judgment is "to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required." Snow v. Harnischfeger Corp., 12 F.3d 1154, 1157 (1st Cir. 1993) (quotations and citations omitted).  The court may only grant a

4

motion for summary judgment where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

The party seeking summary judgment bears the initial burden of establishing the lack of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Quintero de Quintero v. Aponte-Roque, 974 F.2d 226, 227-28 (1st Cir. 1992). In cases where a prosecutor is claiming absolute immunity, the "prosecutor has the burden of establishing" that he is entitled to such immunity. Hart v. O'Brien, 127 F.3d 424, 439 (11th Cir. 1997). The court must view the entire record in the light most favorable to the plaintiff, "'indulging all reasonable inferences in that party's favor.'" Mesnick v. General Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991) (quoting Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990)). However, once the defendant has submitted a properly supported motion for summary judgment, the plaintiff "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986) (citing Fed. R. Civ. P. 56(e)).

5

### Absolute Immunity

"It is firmly established that prosecutors are entitled to absolute immunity from suits for damages arising from activities that are 'intimately associated with the judicial phase of the criminal process.'" Barbera v. Smith, 836 F.2d 96, 99 (2d Cir. 1988) (quoting Imbler v. Pachtman, 424 U.S. 409, 430-31, (1976)). Such immunity encompasses "activities that can fairly be characterized as closely associated with the conduct of litigation or potential litigation," Barrett v. United States, 798 F.2d 565, 571-72 (2d Cir. 1986), including "acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial." Buckley v. Fitzsimmons, 509 U.S. 259, 273 (1993).

A court's absolute immunity inquiry turns on a functional analysis of the prosecutorial actions at issue in the case. See Burns v. Reed, 500 U.S. 478, 486 (1991). "[A]cts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity," but "those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings are not."

7

<u>Buckley v. Fitzsimmons</u>, 509 U.S. 259, 273 (1993). "Preparation, both for the initiation of the criminal process and for a trial, may require the obtaining, reviewing, and evaluating of evidence." <u>Imbler</u>, 424 U.S. at 431 n.33. In this regard, "the prosecutor-as-advocate 'evaluat[es] evidence and interview[s] witnesses as he prepares for trial . . . ." <u>Guzman-Rivera v. Rivera Cruz</u>, 55 F.3d 26, 30 (1st Cir. 1995) (citations and quotations omitted).

Similarly, "[t]he decision whether or not to charge is at the core of the prosecutorial functions the courts have sought to insulate from second guessing through civil litigation." <u>Harrington v. Almy</u>, 977 F.2d 37, 40 (1st Cir. 1993). Consistent with this, courts have held prosecutors absolutely immune in cases arising from the initiation of prosecution even if it allegedly "'may have been undertaken maliciously, intentionally, and in bad faith,'" <u>Siano v. Justices of Massachusetts</u>, 698 F.2d 52, 58 (1st Cir. 1983) (quoting <u>Norton v. Liddel</u>, 620 F.2d 1375, 1379 (10th Cir. 1980)), and where the prosecution allegedly "knowingly allowed the Commonwealth to use forged evidence," <u>Siano</u>, 698 F.2d at 58, or perjured testimony, <u>Graves v. Hampton</u>, 1 F.3d 315, 318 n.9 (5th Cir. 1993), abrogated on other grounds, <u>Arvie v. Broussard</u>, 42 F.3d 249, 251 (5th Cir. 1994), or withheld exculpatory evidence contrary to discovery orders, <u>Reid v. New</u>

8

<u>Hampshire</u>, 56 F.3d 332, 337 (1st Cir. 1995).

With regard to administrative and investigative actions, the immunity to which a prosecutor is entitled varies.  In <u>Buckley</u> the Supreme Court revisited the scope of absolute immunity in the context of a prosecutor's investigative function:

> There is a difference between the advocate's role in evaluating evidence and interviewing witnesses as he prepares for trial, on the one hand, and the detective's role in searching for the clues and corroboration that might give him probable cause to recommend that a suspect be arrested, on the other hand.  When a prosecutor performs the investigative functions normally performed by a detective or police officer, it is neither appropriate nor justifiable that, for the same act, immunity should protect the one and not the other.

<u>Buckley</u>, 509 U.S. at 273 (citations and quotations omitted).  In analyzing whether alleged conduct is entitled to absolute immunity, courts have considered the association of the conduct with the prosecutor's role as advocate, the timing of the conduct in relation to the criminal process, and how akin the conduct is to police or detective work as opposed to presentation of evidence for trial.  <u>See</u> <u>Buckley</u>, 509 U.S. at 274; <u>Ireland v. Tunis</u>, 113 F.3d 1435, 1445 (3d Cir. 1997); <u>Barbera v. Smith</u>, 836 F.2d 96, 100 (2d Cir. 1987) ("where no proceedings have begun, qualified immunity is the norm").  The Third Circuit has stated that absolute immunity is inapplicable in "administrative or investigative acts antecedent or extraneous to the judicial

9

process," "such as the preliminary gathering of evidence," although "investigative acts undertaken in direct preparation of judicial proceedings, including the professional evaluation of evidence, warrant absolute immunity." Ireland, 113 F.3d at 1445.

In this case, the doctrine of absolute immunity shields Anderson from the plaintiff's malicious prosecution claims in so far as he asserts that the prosecution was initiated with malice, without probable cause, and for purposes other than bringing the plaintiff to justice. See Buckley, 509 U.S. at 273; Siano, 698 F.2d at 58. Similarly, the plaintiff's claims against Anderson asserting an alleged conspiracy to fabricate evidence and testimony "in the process of prosecuting [the] unfounded and malicious charges," Am. Compl. at 7, asserting alleged misrepresentations of law to the court, and asserting the knowing introduction of false testimony, are barred by the prosecutor's absolute immunity. See Buckley, 509 U.S. at 273; Siano, 698 F.2d at 58.

The plaintiff also contends, however, that Anderson is liable on the basis of his actions as an administrator and investigator. Yet all of the conduct that the plaintiff identifies as administrative involved the oversight and direction of the plaintiff's prosecution by one of Anderson's subordinates. See Nizetic Aff. at Pars. 9, 10, 11, 13, and 14; Hopkins Aff. at

10

9, 10, 11, 12 and 13; and Ramsay Aff. at 8, 9, 10, 11, and 12.[4] The plaintiff provides no authority for the proposition that a prosecutor, in supervising and controlling the conduct of subordinate attorneys in relation to the prosecution of a case, performs an administrative function outside of his role as advocate for the state such that he no longer enjoys absolute immunity. Indeed, to remove the shield of absolute immunity from such supervisory conduct would threaten the very interests that such immunity is intended to protect, particularly in prosecutors' offices with a number of attorneys where responsibilities are delegated to assistants. See Imbler, 424 U.S. at 427-28 (absolute immunity serves to "protect the vigorous and fearless performance of the prosecutor's duty that is essential to the proper functioning of the criminal justice system."); see also, Siano, 698 F.2d at 58 (claims against district attorney stemming from presence and conduct in courthouse subject to immunity "since an assistant district

---

[4]The court notes that affidavits are evidence and entitled to weight in the summary judgment context only in so far as the affiant attests to facts in the personal knowledge of the affiant. To the extent that the affidavits in support of the plaintiff's opposition to summary judgment are premised "upon information and belief," or state a subjective observation of events, such as "it appeared that," the statements are not entitled to any weight. See, e.g., Cadle Co. v. Hayes, 116 F.3d 957, 961 (1st Cir. 1997).

11

attorney, under [the district attorney's] supervision was presenting the government's case."). The court concludes that the plaintiff has failed to establish a genuine issue of material fact in support of his claims that Anderson engaged in conduct that was administrative in nature and therefore beyond the scope of absolute immunity.

Finally, the plaintiff also asserts that Anderson engaged in investigatory conduct and therefore is not entitled to absolute prosecutorial immunity for the conduct. As discussed above, however, the simple fact that conduct is investigatory does not remove the conduct from the protection of absolute immunity. Indeed, some investigatory conduct is often a necessary element of a prosecutor's preparation of a case. See Imbler, 424 U.S. at 431 n.33.

In support of his argument, the plaintiff first asserts that Anderson acted in an investigatory role when he noted the testimony of Davis in the January 19, 1996, Plymouth District Court trial regarding the plaintiff's alleged threats while brandishing a gun. "Hearing this testimony, Defendant Kenneth Anderson relayed this information to New Hampshire State Trooper Turbane, who subsequently sought an indictment against Mr. Ramsay for felony criminal threatening." Nizetic Aff. at par. 5. The court finds untenable the plaintiff's argument that such actions

12

constitute investigative conduct outside the prosecutor's role as advocate. Anderson's conduct took place in the context of an ongoing trial in response to apparently unforseen testimony and bears no resemblance to typical detective or police work. See Buckley, 509 U.S. at 273.[5]

The plaintiff's other accusations of investigatory conduct are general and ambiguous, as are the affidavits supplied by the plaintiff in support of his arguments. For example, Hopkins attests that:

> Anderson took an active role as an investigator and interviewed witnesses and gathered evidence, though he refused to interview or have other officers interview any of the preferred defense witnesses. Acting as investigator, Attorney Anderson talked to several witnesses and communicated information to other witnesses. It appeared that Anderson encouraged witnesses to fabricate evidence and pursued additional investigation. Indeed, for much of the history of this matter it appeared that Anderson was acting as an investigator.

Hopkins Aff. at par. 14. Similarly, Nizetic attests that "Anderson acted in an investigative role in interviewing witnesses and gathering evidence." Nizetic Aff. at par. 12. "Specifically, by inquiring in regards to any criminal

---

[5]Moreover, all three affidavits supplied by the plaintiff state that "without further investigation" Anderson then filed four criminal complaints in the Grafton County Superior Court. See Nizetic Aff. at par. 11; Hopkins Aff. at par. 6; Ramsay Aff. at par. 5.

13

threatening Anderson acted in an investigative capacity." Id.

As discussed above, the mere fact that conduct is of an investigatory nature does not remove that conduct from the protection of absolute immunity as it is often a part of the prosecutor's role as advocate. See Buckley, 509 U.S. at 273. Therefore, the affiants' general statements that Anderson engaged in investigatory actions are insufficient to establish a genuine issue of material fact concerning whether Anderson engaged in investigatory conduct beyond the bounds of his role as advocate. None of the affiants' statements indicate that Anderson's actions were akin to police or detective work, such as a preliminary investigation into a case, or uncovering evidence in the fist instance.[6] See Ireland, 113 F.3d at 1445. Indeed, the plaintiff's claims against Anderson are premised upon actions and conduct that took place "in the process of prosecuting" the plaintiff and allege discussion or "interviews" only between the prosecutor and the officers involved: Gilpatric, Davis, and McCormack. See Am. Compl. at par. 31; see also, pars. 27-38, 48-53. To the extent that these interviews in furtherance of trial preparation and the plaintiff's prosecution allegedly involved a

---

[6]It is undisputed that Anderson had no role in the plaintiff's case until September 26, 1995, after charges had been filed against the plaintiff by McCormack, on July 31, 1995.

14

conspiracy to fabricate evidence, Anderson is immune.  See supra.
In the context of this case, the plaintiff has therefore failed
to establish a triable issue as to whether the defendant engaged
in investigatory conduct beyond the scope of absolute
prosecutorial immunity.[7]

Given the court's conclusion, the court need not address the
defendant's other arguments.


## Conclusion

In light of the above discussion, the court grants the
defendant's motion for summary judgment (document no. 25).

SO ORDERED.


---

_____
Joseph A. DiClerico, Jr.
District Judge

June 29, 1999

cc:  Peter G. McGrath, Esquire
     Martha A. Moore, Esquire

---

[7]Although Hopkins attests that Anderson gave legal advice to
McCormack regarding whether or not the arrest of the plaintiff
was appropriate, the plaintiff does not dispute that Anderson had
no involvement with the case until September 25, 1995, while the
plaintiff's arrest occurred on July 4, 1995, and the complaints
were filed on July 31, 1995.  The record indicates that any
statement by Anderson to McCormack could therefore not have taken
place in the context of the plaintiff's arrest or the filing of
complaints against him, but sometime well thereafter in the
process of the plaintiff's prosecution.  Cf. Burns, 500 U.S. at
492-496.

15

Douglas N. Steere, Esquire
R. Matthew Cairns, Esquire